878 P.2d 746

Janet MILLER, Plaintiff–Respondent,

v.

Larry ECHOHAWK, Attorney General of the State of Idaho, on behalf of the People of the State of Idaho, Plaintiff–Intervenor–Appellant,

v.

Pete T. CENARRUSA, Secretary of State of the State of Idaho, Michael D. Crapo, President Pro Tempore of the Idaho State Senate, and Tom Boyd, Speaker of the House of Representatives of the State of Idaho, Defendants–Appellants.

No. 20398.

Supreme Court of Idaho,
Boise.

April 25, 1994.

Rehearing Denied Aug. 25, 1994.

**48**

Larry EchoHawk, Atty. Gen., Francis P. Walker (argued), Deputy Atty. Gen., Boise, for appellant EchoHawk.

Benito T. Ysursa, Boise, for appellant Cenarrusa.

Harris & Sutton, Boise, for respondent. Jim C. Harris, argued.

TROUT, Justice.

## I.

## INTRODUCTION

This case involves an award of attorney fees to respondent under the Private Attorney General Doctrine. We affirm.

## II.

## BACKGROUND AND PROCEDURAL HISTORY

In 1990, the federal census was taken. The Idaho legislature is obligated to reapportion itself based on the census data. In the spring of 1991, the legislature began working on the reapportionment plan in preparation for the release of the census data. In the fall of 1991, a rough draft of a plan was drawn. According to the Memorandum Decision and Order (Memorandum Decision) issued by the district court, a number of legislators had expressed dissatisfaction with the draft plan and few people believed the proposed plan would be quickly adopted.

On November 25, 1991, Janet Miller ("Miller") filed a lawsuit, as a registered voter, in which she: (1) sought to have the existing reapportionment plan, Plan 14–B, declared unconstitutional (Count I); (2) sought an injunction to prevent the secretary of state from holding an election pursuant to Plan 14–B (Count II); and (3) requested that the court allow the legislature to attempt to enact a constitutionally, valid reapportionment plan but set a date by which the court would adopt its own plan if the legislature had not reapportioned itself (Count IV). Miller's complaint alleged that the legislature had in the past been unable to adopt a valid reapportionment plan; that the Idaho Code required candidates seeking election to the Idaho legislature to file by a date certain, which was within 118 days from the date of her complaint; and that as a result of no reapportionment plan being enacted, citizens were confused regarding their ability to participate in the election.

On January 2, 1992, the Idaho attorney general filed a notice of appearance and a motion for enlargement of time for defendants Pete Cenarrusa, secretary of state, and Michael Crapo and Tom Boyd, the leaders of the legislature. The district court granted this motion and gave the defendants until February 5, 1992, to answer. On January 8, 1992, Miller filed a summary judgment motion on the first two counts of her complaint.

On January 24, 1992, the attorney general, on behalf of the defendants, answered Miller's complaint. In its answer, the defendants argued that the legislature should have until January 31, 1992, to complete a reapportionment plan and if it failed to do so, the defendants agreed that the court should take over the reapportionment process. On the same day, the attorney general's office filed a complaint in intervention asking the court to adopt a judicially imposed reapportionment plan. On February 3, 1992, the attorney general filed a motion to intervene on behalf of the people of the state of Idaho. By January 31, 1992, the date of the self-imposed deadline, no reapportionment plan had been passed by the legislature. The district court assumed jurisdiction to reapportion the

legislature and set March 2, 1992 as the date to begin hearings on proposed plans.

On February 10, 1992, the court granted partial summary judgment for Miller, holding that Plan 14–B was unconstitutional and that the secretary of state was permanently enjoined from conducting any election under Plan 14–B. The court also granted the attorney general's motion to intervene.

On February 28, 1992, the legislature passed House Bill No. 760 which reapportioned the legislative districts, which bill was signed by the governor on March 3, 1992. As a consequence, the court vacated the proceedings for court constructed reapportionment set to start March 2, 1992. On September 12, 1992, the court issued its final judgment, which incorporated the partial summary judgment and dismissed the matter without prejudice.

On October 19, 1992, the district court issued its memorandum decision holding that Miller was entitled to recover attorney fees pursuant to the Private Attorney General Doctrine. The attorney general filed a motion to reconsider which the court denied orally on December 12, 1992. The attorney general has appealed.[1]

### III.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING ATTORNEY FEES PURSUANT TO THE PRIVATE ATTORNEY GENERAL DOCTRINE

In *Hellar v. Cenarrusa*, 106 Idaho 571, 682 P.2d 524 (1984), another case challenging a proposed reapportionment scheme, this Court held that the trial court has discretion to award attorney fees to the prevailing party under the Private Attorney General Doctrine. *Id.* at 578, 682 P.2d at 531. In so holding, the Court adopted a three-factor test to determine the right to an award of attorney fees under the Private Attorney General Doctrine. The three factors to be considered are: (1) the strength or societal importance of the public policy [v]indicated

by the litigation; (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and (3) the number of people standing to benefit from the decision. *Id.* at 577–78, 682 P.2d at 530–31.

In the instant case, the district court specifically found that the three requirements of *Hellar* had been met and awarded Miller attorney fees. The court stated:

> [The private attorney general doctrine] requires that there be an important public policy indicated by the litigation; that there be necessity of private enforcement and there be a large number of people standing to benefit from the litigation. The reapportionment of the electorate and the legislature's inability to perform its duties meet at least 2 of the criteria. The Attorney General makes an unsupported contention that it would have stepped in to require the legislature fulfill its duties; the Court believes that a private lawsuit was required.

An award of attorney fees under the Private Attorney General Doctrine will be reversed only on a showing of an abuse of discretion by the trial court. *Fox v. Board of County Commr's, Boundary County*, 121 Idaho 684, 685, 827 P.2d 697, 698 (1992). Factual findings that are the basis for an exercise of discretion such as the award of fees are subject to a substantial and competent evidence standard of review. This is consistent with the clearly erroneous standard of I.R.C.P. 52(a). A finding of fact is not clearly erroneous if it is supported by substantial and competent evidence. *See Mulch v. Mulch*, 125 Idaho 93, 867 P.2d 967 (1994). This Court has previously indicated that the determination that the three-part test of *Hellar* has been met involves a factual determination by the trial court. *Hellar*, 106 Idaho at 577, 682 P.2d at 530; *County of Ada v. Red Steer Drive–Ins of Nevada, Inc.*, 101 Idaho 94, 101, 609 P.2d 161, 168 (1980).

Thus, a review of the district court's exercise of discretion in awarding fees in this case turns on the question of whether the

---

1. The defendants have joined in the attorney general's brief. Therefore, for purposes herein, the term "appellants" includes both defendants and the attorney general.

district court's factual determination that the three considerations of *Hellar* were met is clearly erroneous. There is no claim made by appellants that the first and third parts of the *Hellar* test have not been met. Nor is there a viable argument made that Miller did not meet the "burden on the plaintiff" aspect of the second part of the *Hellar* test. The only real issue is the district court's determination that a private lawsuit was necessary. Appellants argue that a private lawsuit was not needed because the attorney general was involved and would have sought judicial assistance if the legislature had failed to reapportion itself.

We cannot conclude that the district court's determination that a private lawsuit was needed was clearly erroneous. There is in the record substantial and competent evidence to support this determination. While the district court noted that the attorney general had made an unsupported contention that it would have stepped in and made the legislature fulfill its duties, the undisputed facts before the court when it made its fee award determination were that the defendants' self-imposed deadline of January 31, 1992, for reapportioning itself was in direct response to Miller's suit and that even that self-imposed deadline was not met. Only after the district court assumed jurisdiction to reapportion the legislature in January of 1992, did the legislature in February of 1992, reapportion itself. At the time the court made this decision, there was no concrete evidence before it to prove what the attorney general would have done had there been no lawsuit.[2] We also note that the district court witnessed the proceedings in this matter and was in a better position than we are to determine the effect this lawsuit had on the legislature. Faced with the undisputed facts before it, versus the Attorney General's contentions regarding what he would have done, the district court was not clearly erroneous in its determination that private enforcement was needed in this case.

Having found that there was substantial competent evidence to support the district court's factual determination, we next turn to the question of whether the district court's decision to award attorney fees in this case was an abuse of discretion. In reviewing an alleged abuse of discretion, we must ascertain whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991); *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)). It is obvious from the record that the district court correctly perceived the decision regarding the award of attorney fees to be discretionary. The court applied the standards articulated in *Hellar*, made findings with respect to the three factors and acted within the boundaries of its discretion. Finally, the court presented a thoughtful and reasonable analysis regarding the award of fees. Thus, we conclude that the district court did not abuse its discretion in awarding fees based on its determination that the three-part test of *Hellar* had been met.

## IV.

## CONCLUSION

For the reasons set out above, the grant of fees by the district court is affirmed. Costs and fees on appeal to respondent.

McDEVITT, C.J., and BISTLINE and JOHNSON, JJ., concur.

SILAK, Justice, dissenting.

In awarding Miller her attorney fees the district court found that Miller had satisfied the "necessity for private enforcement" re-

---

2. It was not until the appellant submitted its motion for reconsideration that an affidavit from Attorney General Larry EchoHawk was submitted in which he described the efforts of the attorney general's office prior to Miller's suit vis-a-vis the reapportionment issue and the attorney general's commitment to seek a judicial resolution if the legislature had failed to reapportion itself.

quirement of the Private Attorney General Doctrine. Specifically, the district court found:

> [T]his Court believes this lawsuit was the catalyst in pushing the Legislature to pass a reapportion plan. This Court believes there was a causal connection between the lawsuit and the plan and that the lawsuit had the effect of achieving what the Plaintiff desired.

Because there is no substantial competent evidence in the record to support this finding, I respectfully dissent. Miller failed to present any evidence that the Legislature passed its reapportionment plan on February 28, 1992, in order to avoid having the issue resolved by the court. In fact, the record shows that the Legislature, by resolution dated January 15, 1992, imposed on itself a deadline to have the reapportionment passed by January 31, 1992, not because of the threat of having the court take over the matter, but because failure to resolve reapportionment would impede passage of other legislation. In answering Miller's complaint, the Legislature agreed that the court could proceed to determine reapportionment judicially if the Legislature could not accomplish it by the January 31 deadline. Although the Legislature missed its self-imposed deadline, the record shows that the Legislature proceeded to enact its own plan on February 28, 1992, long before its adjournment, and before the court commenced the proceedings which had been scheduled to determine reapportionment judicially. In the absence of any evidence in the record, we should not assume, or speculate, that the Legislature accomplished its legislative function as a result of fear that the court would take over the task, rather than because the Legislature was simply able to do its job.

However, even if we speculate that it was the threat of having reapportionment determined by the court that compelled the legislature to enact its own plan in due time, Miller did not present any evidence to show that a private enforcement action was required to raise the threat of judicial usurpation. It was incumbent on Miller to show that the Attorney General would not have pursued such an action on behalf of the people of Idaho, and that therefore private enforcement was necessary. The Attorney General did not bear the burden of proving he would have acted in the course of his normal duty. In any case, as the majority opinion notes, on January 24, 1992, the Attorney General did file a complaint to intervene, asking the court to adopt a judicially imposed reapportionment plan. Miller, who filed her suit about six weeks before the Legislature even convened, and eight weeks before the Attorney General intervened, simply filed her private action prematurely. The same results could have been obtained through the Attorney General's timely filing of an action in January, and Miller has failed to present any evidence that inaction by the Attorney General necessitated her private enforcement action. Because Miller failed to present substantial competent evidence that her private enforcement action was necessary to compel the legislature to accomplish a timely reapportionment, I would vacate the district court's order awarding her attorney fees under the Private Attorney General Doctrine.