914 P.2d 564

**Dale Clint BULLARD, Claimant–Appellant,**

v.

**SUN VALLEY AVIATION, INC., Employer and State of Idaho, Department of Employment, Respondents.**

No. 21564.

Supreme Court of Idaho,
Boise, November 1995 Term.

March 29, 1996.

E. Lee Schlender, Chartered, Hailey, for appellant. E. Lee Schlender, argued.

Hawley, Troxell, Ennis & Hawley, Rand L. Peebles, Ketchum, for respondent Sun Valley Aviation. Michele L. Engel, argued.

Alan G. Lance, Attorney General, Carol L. Brassey, Deputy Attorney General, Boise, for respondent State of Idaho.

SCHROEDER, Justice.

This is an appeal of an Industrial Commission decision denying unemployment benefits to Dale Clint Bullard (Bullard). The Industrial Commission determined Bullard was discharged by Sun Valley Aviation, Inc. (Sun Valley Aviation) for misconduct in connection with his employment. On cross-appeal Sun Valley Aviation requests attorney fees. The Department of Employment appears as co-respondent.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Bullard worked as a line service employee for Sun Valley Aviation from December 9, 1991, to January 4, 1994. Sun Valley Aviation is a fixed-based operator at Friedman Memorial Airport in Hailey, Idaho.

On January 2, 1994, Bullard asked the air traffic controller for permission to cross the runway while operating a tug used to tow small aircraft from one area of the airport to another. Federal Aviation Administration (FAA) rules and regulations and section 329 of the Friedman Memorial Airport Certification Manual require permission from the controller before crossing a runway. Section 329 requires fixed-base operators located at the airport to train their employees to follow the airport's certification procedures for ground vehicle movement. The air traffic controller testified that he told Bullard to "hold short" because an airplane had just been cleared for takeoff on that runway. However, Bullard crossed the runway. He testified before a Department of Employment appeals examiner that he crossed the runway because: "I assumed when the tower came back, because of all the noise he was ... the tower told me I was approved to cross." Alternately, he stated that he actually heard the words, "You're approved to cross." However, he also testified that when he was subsequently advised by the air traf-

fic controller that he had not been approved to cross, he told the tower he had not been able to hear the tower clearly because of all the noise coming from the north end of the runway.

On January 3, someone pulled a Sun Valley Aviation tug across the runway without permission from the air traffic control tower. The tower operator testified that he recognized the voice of the tug operator as that of Bullard.

On January 4, the airport manager presented Bullard with a letter regarding the two incidents. The letter stated that it constituted a "2nd Offense Warning" and that "any further offenses by you can, *and will* result in you being banned from operating on this airfield for up to one (1) year." The airport manager's notice was provided in accordance with section 329 of the airport's certification manual.

Ken McCune, the vice president and general manager of Sun Valley Aviation, terminated Bullard's employment on January 4, based on an oral and written report by the airport manager regarding the two incidents, a follow-up investigation, and Bullard's past employment record. McCune testified that he believed Bullard's crossing of the runway on both days without clearance was deliberate. In a letter to the Department of Employment McCune stated that Bullard's conduct "damaged Sun Valley Aviation's relations with the Airport tower and Manager." In a subsequent letter, McCune alleged that Bullard's disregard of his own and others' safety on January 2nd and 3rd constituted a "wanton and willful disregard of Sun Valley's interest," and that his previous conduct "failed to meet Sun Valley Aviation's standards for customer service and supervisory skills needed for a line shift supervisor."

Bullard filed a claim for unemployment benefits on January 6, 1994. In an eligibility determination he was declared eligible for benefits on the basis that misconduct had not been established. Sun Valley Aviation appealed that decision, which was affirmed in a redetermination. Sun Valley Aviation again appealed, and the matter was heard by a Department of Employment appeals examin-er. The appeals examiner denied Bullard's claim on the ground that his conduct on January 2nd and 3rd amounted to a serious violation of FAA rules and regulations and those of the airport. Such conduct, the appeals examiner concluded, was "a reckless disregard of reasonable safety rules or the claimant's actions were done with such a gross disregard of the results that he not only placed himself in personal jeopardy but individuals who were using the airport."

Bullard appealed this decision to the Industrial Commission which adopted the appeals examiner's findings of facts with minor modifications. The Commission concluded that Bullard "intentionally and substantially" disregarded Sun Valley Aviation's interest. Bullard now appeals the Commission's decision to this Court.

## II.

### STANDARD OF REVIEW

Judicial review of Industrial Commission decisions is limited to questions of law. Idaho Const. art. V, § 9; *Idaho Mut. Benefit Ass'n v. Robison*, 65 Idaho 793, 801, 154 P.2d 156, 160 (1944); *Sunshine Mining Co. v. Allendale Mut. Ins. Co.*, 105 Idaho 133, 135–36, 666 P.2d 1144, 1146–47 (1983). This Court will not disturb the Commission's findings of fact where they are supported by substantial competent, albeit conflicting, evidence. *Booth v. City of Burley*, 99 Idaho 229, 232, 580 P.2d 75, 78 (1978); *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 278, 787 P.2d 263, 264 (1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 260, 715 P.2d 927, 930 (1985). It is for the Commission to determine the credit and the weight to be given the testimony admitted. *Ramsey v. Employment Sec. Agency*, 85 Idaho 395, 401, 379 P.2d 797, 801 (1963).

## III.

### THERE IS SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS.

The Commission's finding that Bullard crossed the runway on January 2nd and 3rd

without permission is supported by substantial and competent evidence in the record. Bullard argues a number of facts, but this Court will not reweigh the evidence.

## IV.

### BULLARD'S CONDUCT CONSTITUTED MISCONDUCT.

 This Court has articulated a test for three types of conduct to determine whether an employee is ineligible for unemployment benefits due to a discharge based on "misconduct" as used in section 72–1366(e) of the Idaho Code: (1) a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's rules; or (3) a disregard of standards of behavior which the employer has a right to expect of its employees. *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957). This Court has bifurcated the test for "standards of behavior" misconduct into an evaluation of "(1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case." *Puckett v. Idaho Dep't of Corrections*, 107 Idaho 1022, 1023–24, 695 P.2d 407, 408–09 (1985). The tests for all three types of misconduct are factual determinations. *Campbell v. Bonneville County Bd. of Comm'rs*, 126 Idaho 222, 225, 880 P.2d 252, 255 (1994).

 The Industrial Commission concluded that Bullard's conduct was an intentional disregard of Sun Valley Aviation's interest. The Commission based this conclusion in part on language in *Mandes v. Employment Sec. Agency*, 74 Idaho 23, 255 P.2d 1049 (1953), that negligence may be construed to be willful or intentional misconduct if it is of such a degree or recurrence as to manifest "culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." 74 Idaho at 25, 255 P.2d at 1050. The Commission construed Bullard's conduct to be willful or intentional based on the air traffic control tower operator's testimony that it constituted a "gross violation

of Federal Aviation Administration (FAA) and airport regulations, with life-threatening implications," and the airport manager's characterization of the two incidents as "exceptionally serious" and "potentially life threatening."

Bullard argues that the Commission's reliance on the inferred intent standard announced in *Mandes* was in error. *See Bortz v. Payless Drug Store*, 110 Idaho 942, 945, 719 P.2d 1202, 1205 (1986) (This court must set aside an order of the Industrial Commission where it fails to make a proper application of the law to the evidence.); *Matthews v. Bucyrus–Erie Co.*, 101 Idaho 657, 659, 619 P.2d 1110, 1112 (1980) (decision of Industrial Commission reversed and remanded where Commission erroneously interpreted the definition of "misconduct").

This Court has not referred to the inferred intent standard in the numerous case law recitations of the definition of misconduct during the 40–year interim since *Mandes*. The applicable standard for misconduct is stated in *Johns v. S.H. Kress & Co.*:

> While the term "discharged for misconduct" ... has been variously defined, we think the term should be interpreted as meaning willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

78 Idaho at 548, 307 P.2d at 219. This is the definition the Court has relied on since 1957.

*Mandes* means simply that conduct may be so egregious that a fact finder may infer that it was wilful or intentional misconduct or that the conduct evidences a disregard of the employer's interest. It is clear that the question in this case which the Commission addressed was whether there was a preponderance of the evidence that Bullard's conduct was intentional, and/or whether there was a preponderance of the evidence that Bullard's conduct fell below the standard of behavior Sun Valley Aviation had a right to expect. Reference to the inferred intent standard stated in *Mandes* does not render its findings invalid.

In its decision the Commission cited *Davis v. Howard O. Miller Co.*, 107 Idaho 1092, 695 P.2d 1231 (1984), for the rule that in a standards-of-behavior misconduct case, "the employer's expectations must be communicated to the employee." However, as this Court recently clarified in *Merriott v. Shearer Lumber Prod.*, 127 Idaho 620, 903 P.2d 1317 (1995), an employer need only communicate those expectations and duties which do not "flow naturally" from an employment relationship. 127 Idaho at 622, 903 P.2d at 1319. There is ample evidence in the record to support a finding that Sun Valley Aviation's expectation that its employees would not cross the airport runways without clearance from the control tower flows naturally from the nature of Bullard's employment and his years of experience.

■ In discharging Bullard, Sun Valley referred to the events that occurred on January 2, and 3, 1994, and to prior failures in customer service and supervisory skills. The prior deficiencies would not form the basis for a determination of misconduct under the Employment Security Law. The question arises as to whether the discharge combined a basis that would not preclude receipt of unemployment compensation with an allegation of misconduct that would be a basis to deny unemployment compensation.

Sun Valley's letter to the Department of Employment setting forth the reasons for terminating Bullard cited his violations of the rules and regulations at the airport endangering patrons and the relationship with the airport management in combination with "his unwillingness to change his bad attitudes." However, Sun Valley subsequently clarified its position concerning discharge in its protest to the Department of Employment with the following explanation:

> The singular events that resulted in Mr. Bullard's termination was [sic] the events that occurred on 1/2/94 and 1/3/94 caused by Mr. Bullard's bad attitude which led to his substantial disregard for the safety of himself and the other patrons of this airport by crossing the runway without the control tower's clearance and thus violating Friedman Memorial Airport and Federal Aviation Administration's rules and regula-

tions. As an added aggravation, Mr. Bullard's bad attitude also led him to violate Federal Communication Commission rules and regulations with his use of profane language on the radio. In addition, the seed's [sic] of Mr. Bullard's termination for misconduct had already been planted by Mr. Bullard himself as he failed to meet Sun Valley Aviation's standards for customer service and supervisory skills needed for a line supervisor.

It is clear that Sun Valley Aviation was not satisfied with Bullard's prior conduct, but it is also clear that the basis of the discharge was the violation of FAA and airport rules and regulations. Both the appeals examiner and the Commission recognized that failures in job performance do not constitute misconduct within the meaning of the Employment Security Law. Whatever Bullard's perceived failings before the violation of the FAA and Airport rules and regulations on January 2nd and 3rd, those issues were not the final basis for his discharge and did not contribute to the conclusions of either the appeals examiner or the Commissioner.

The Commission concluded that "Employer has demonstrated that Claimant intentionally and substantially disregarded its interest" and "that Claimant was discharged for misconduct in connection with employment." There is substantial, competent evidence to support these conclusions. Although Sun Valley Aviation cited Bullard's prior failure to meet standards for customer service and supervisory skills, it is clear from the record that the determining factor for his discharge was the conduct of January 2nd and 3rd which the Commission determined was misconduct precluding him from unemployment benefits.

## V.

## SUN VALLEY AVIATION'S CLAIM FOR ATTORNEY FEES IS DENIED.

■ Sun Valley argues that Bullard's appeal presents no meaningful question of law and does no more than ask this Court to reweigh the evidence. *See Talbot v. Ames Constr.*, 127 Idaho 648, 654, 904 P.2d 560, 566 (1995) (Where attorney acts in bad faith in

appealing lower tribunal's decision by simply asking this Court to reweigh the evidence, a sanction under I.A.R. 11.1 in the amount of respondent's attorney fees is appropriate.) However, this case presented legitimate issues of the basis of the discharge and the proper standards for determining employment misconduct. The claim for attorney fees is denied.

## VI.

### CONCLUSION

The decision of the Industrial Commission is affirmed. Sun Valley Aviation's request for attorney fees is denied. Costs are awarded the respondents.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and TRANSTRUM, J. Pro Tem, Concur.