977 P.2d 203

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Daryl R. BYINGTON, Defendant–Appellant.**

No. 24759.

Supreme Court of Idaho,
Boise, December 1998 Term.

March 12, 1999.

Roark Law Firm, Hailey, for appellant. D. Doug Nelson argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

JOHNSON, Justice Pro Tem.

This is a criminal case on review from a decision of the Court of Appeals. We adopt several portions of the Court of Appeals opinion. We add an opinion of our own concerning the standard we follow in reviewing a trial court's decision balancing the probative value of evidence against its prejudicial effect pursuant to Rule 403 of the Idaho Rules of Evidence (I.R.E.). We uphold the trial court's balancing decision.

We also add an opinion concerning review of the trial court's decision to allow the testimony of a witness for the State who was disclosed to the defense after the jury was selected. We conclude: (1) there is substantial and competent evidence to support the trial court's finding that the defense was not unfairly prejudiced, and (2) the trial court did not abuse its discretion in allowing the witness to testify.

## I.

### THE COURT OF APPEALS OPINION

The Court of Appeals opinion is *State v. Byington*, 132 Idaho 597, 977 P.2d 211 (Ct.App.1998). We adopt the statement of the background of the case set forth by the Court of Appeals in part I of its opinion. At oral argument before our Court, Byington's attorney took no exception with the

following parts of the Court of Appeals opinion: II(A) (Probable Cause for Search Warrant), II(B) (Scope of Search Warrant), II(F) (Sufficiency of Evidence), and II(G) (Sentencing). Therefore, we adopt these parts. In addition, we agree with part II(E) (Black's Testimony) and adopt it also. This leaves us with parts II(C) (Motion in Limine) and II(D) (Late Disclosure of Witness) to discuss in this opinion.

## II.

### MOTION IN LIMINE

The only portion of this part of the Court of Appeals opinion we find it necessary to address is that in which the Court of Appeals considered whether the evidence met the balancing test of I.R.E. 403. The Court of Appeals appears to have conducted de novo review of the trial court's ruling that the probative value of the evidence is not outweighed by any unfair prejudice. This is contrary to our usual standard, which is to review a trial court's decision pursuant .to I.R.E. 403 to determine if the trial court abused its discretion. *State v. Tapia,* 127 Idaho 249, 254, 899 P.2d 959, 964 (1995). This means that we conduct the following three-step inquiry: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In the present case, the trial court understood that it was within its discretion to admit the seized materials not depicting nudity or sexual situations and applied I.R.E. 403, which is the correct legal standard, to the balancing test. The following statement also demonstrates that the trial court reached its decision by an exercise of reason: "This court has also made a 403 analysis on the probative value versus the prejudicial effect and I believe that the probative value far outweighs the prejudicial effect." Therefore, we conclude that the trial court did not abuse its discretion in denying Byington's motion in limine.

## III.

### LATE DISCLOSURE OF WITNESS

Byington asserts that his right to a fair trial was violated by the trial court's decision allowing a witness for the State, Maia Black, to testify when Black was not disclosed by the State until after the jury had been selected. We disagree.

"Where the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *State v. Olsen,* 103 Idaho 278, 283, 647 P.2d 734, 739 (1982). "To prove prejudice, a defendant must show there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different." *Tapia,* 127 Idaho at 255, 899 P.2d at 965. In *Tapia,* the Court reviewed the trial court's decision to deny a continuance based on the State's late disclosure of evidence by examining the record to see if the defendant had proved unfair prejudice. *Id.* Although we did not say so explicitly, we were inherently examining the record to see if there was substantial and competent evidence to support a finding of no unfair prejudice. This is the appropriate standard of review because of the factual nature of the trial court's finding concerning unfair prejudice and is consistent with the manner in which we have reviewed other factual findings that underlie a trial court's decision that we review under an abuse of discretion standard. *Cf. Systems Assoc. v. Motorola Communications & Elec.,* 116 Idaho 615, 618–20, 778 P.2d 737, 740–42 (1989) (reviewing dismissal of case for lack of timely prosecution by determining if the trial court's finding of actual prejudice was supported by substantial competent evidence).

In *Miller v. EchoHawk,* 126 Idaho 47, 878 P.2d 746 (1994), the Court stated: "Factual findings that are the basis for an exercise of discretion ... are subject to a substantial

and competent evidence standard of review." *Id.* at 49, 878 P.2d at 748. *Miller* is an attorney fees case involving the private attorney general doctrine. In *Miller,* the Court said: "[R]eview of the district court's exercise of discretion in awarding fees in this case turns on the question of whether the district court's factual determination that the [requirements of the private attorney general doctrine] were met is clearly erroneous." *Miller,* 126 Idaho at 49–50, 878 P.2d at 748–49. The Court continued, "Having found that there was substantial competent evidence to support the district court's factual determination, we next turn to the question of whether the district court's decision to award attorney fees in this case was an abuse of discretion." *Id.* at 50, 878 P.2d at 749. We follow a similar procedure in the present case.

Therefore, in light of the constitutional implications of late disclosure, which the trial court is required to address through consideration of unfair prejudice, we review the decision to allow or deny a late-disclosed witness to testify to determine if the trial court abused its discretion. In doing so, we follow the three-step inquiry set forth in *Hedger,* 115 Idaho at 600, 768 P.2d at 1333. The second step of this inquiry requires that we determine whether the trial court applied the correct legal standards in making this decision. In the context of the present case, this second step requires us to determine whether there is substantial and competent evidence to support the trial court's factual finding concerning unfair prejudice. In essence, in light of the definition of prejudice contained in *Tapia,* we examine the evidence before the trial court to determine if there is substantial and competent evidence to support the trial court's finding that there is not a reasonable probability that, but for the late disclosure of Black as a witness for the State, the result of the trial would have been different.

 In finding that Byington was not unfairly prejudiced and allowing Black to testify, the trial court noted:

On the issue of prejudicial surprise to the defendant, the defense, by their own statements here in court today, knew well before the State of Idaho did of allegations of prior sexual misconduct by the defendant with child victims, i.e., [another alleged victim].

So while the defense may not have known of the specific identity of Maia Black, the defense certainly knew of the potential for this type of evidence or type or category of evidence and that it may become an issue in this case. The question really wasn't whether the defense knew of this type of evidence. The question was: Would the state discover it in time to use it?

Lastly, with respect to preparation, the defense has available to it their own investigator. And the defense has announced today that they may have or that they have already accumulated some impeachment evidence against Black; and therefore, given the intervening weekend to prepare, the court does not believe or find that the defense is going to be as unprepared and prejudiced as suggested.

Later, during cross-examination of Black, the trial court stated:

But I'd also note, in fairness to this record and the context and the complaints of the defendant, that they haven't had time to prepare for this witness, it appears to me that that has a pretty hollow ring, because it seems to me that defense is well-prepared to meet much of this witness's testimony.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bullard v. Sun Valley Aviation, Inc.,* 128 Idaho 430, 432, 914 P.2d 564, 566 (1996). In the present case, the following evidence provides substantial and competent evidence to support a conclusion that Byington was not prejudiced by the trial court allowing Black to testify:

1. Byington knew of allegations of prior sexual misconduct by him with at least one other child.

2. Black was known to Byington because she was his sister's stepdaughter.

3. Byington's trial started on Tuesday, April 9, 1996. The jury was selected

and took the oath by the end of the first day.

4. That evening, April 9, 1996, the prosecutor learned of Black's whereabouts and the general outline of her testimony. That same evening the prosecutor gave Byington's attorney Black's name and address.

5. The next morning, Wednesday, April 10, 1996, Byington requested that the trial court exclude Black as a witness. The trial court prohibited the State from mentioning Black to the jury in its opening statement to the jury or otherwise until the trial court ruled on Byington's request.

6. During argument before the trial court on the morning of April 10, 1996, the prosecutor told the trial court that Black would testify that several years earlier Byington showed Black pornography in his bedroom and fondled her.

7. The prosecutor and Byington's attorney made their opening statements to the jury by noon on April 10, 1996. That afternoon, the State began presenting its case to the jury.

8. On Thursday, April 11, 1996, late in the afternoon, the prosecutor presented Black for an offer of proof. The trial court allowed an investigator employed by Byington's attorney to hear the offer of proof. Under examination by the trial court, Black testified in detail during this offer of proof about Byington's inappropriate conduct toward her. The trial court then invited Byington's attorney to inquire "in any other area." Byington's attorney suggested some lines of inquiry, and the trial court pursued them with Black.

9. On the morning of Friday, April 12, 1996, the trial court ruled that Black could testify but postponed Black's testimony until the following Monday, April 15, 1996, to give Byington's attorney an opportunity to prepare.

Although other conclusions about unfair prejudice could be drawn from this and other evidence in the record, a reasonable mind might conclude based on this evidence that Byington was not unfairly prejudiced by the late disclosure of Black. Therefore, we conclude that there is substantial and competent evidence to support the trial court's finding that Byington was not prejudiced.

The record also discloses that the trial court understood it had discretion in deciding whether or not to exclude Black as a witness, acted within the parameters of its discretion and according to the applicable legal standards, and reached its decision by an exercise of reason. Therefore, under *Hedger*, the trial court did not abuse its discretion.

## IV.

### CONCLUSION

We affirm Byington's conviction and sentence.

Chief Justice TROUT, Justices SILAK and WALTERS, CONCUR.

Justice SCHROEDER, Dissenting.

I respectfully dissent from the conclusion of the Court in part III. The Court correctly outlines the applicable law and the appropriate standard of review. It also analyzes factors that weigh in favor of the determination that there was substantial and competent evidence to support the trial court's finding that there was no unfair prejudice in allowing the witness who was disclosed late to testify. Unfortunately, accurate statements of the law and acknowledgment of the discretion of the trial court run headlong into the granite wall of reality. Byington was deprived of the opportunity to defend himself properly. The most telling link in this conclusion comes from the prosecutor's plea to the trial court to allow the witness to testify: *"If this evidence doesn't come in, I mean this is the State's most compelling evidence."* (emphasis added).

The State laid it on the line. The testimony of this witness was its "most compelling evidence" in the case. That's heady stuff and cries out to allow the testimony. It also cries out to allow the defense adequate time to prepare to meet that testimony. It is unreasonable to expect a lawyer to meet the "most compelling evidence" in the case over a

weekend in a trial in progress. There are several factors that demand more to assure a fair trial.

This witness brought to court events that purportedly occurred some eleven years before and which had not been complained of as sexual in nature before this trial. Several lines of inquiry immediately suggest themselves. What actually happened eleven years ago? Speculators are invited to recap where they lived, daily activities, particulars of surroundings, and words spoken in a period eleven years earlier. Further, compress this inquiry into a pressure-filled trial and filter it through an attorney who has planned a defense, prepared, and made an opening statement outlining a theory based upon the best information available.

The trial court made a fundamental error in logic in analyzing Byington's ability to respond to the evidence. The trial court weighed the fact that Byington knew the witness in the past against the defense. Actually, knowing a witness, and knowing that the witness has not made complaints of sexual abuse weighs in favor of allowing the defense more time to explore why the witness now claims such abuse. When in the eleven years did the conclusion form that conduct by Byington was not innocent play? How did it come about that the attitude towards the conduct changed? Was this a personal re-evaluation or one influenced by others? The prosecutor acknowledged difficulty in having contact with the witness who apparently "has had somewhat of a transient life or something."

The trial court commented that the defense attorney appeared to conduct an effective cross-examination. One might ask how much more effective the examination might have been had the defense attorney been given time to prepare adequately?

The prosecutor went to the wall to get this evidence admitted, pleading with the trial court that this was the State's "the most compelling evidence." There is nothing wrong with that. That's effective advocacy. The flaw is that if the evidence is that important to the State, it is certainly that important to the defense. The eighteen-year sentence Byington received attests to the importance of the case to him. If he is guilty, the sentence is warranted, but reality is that he did not have the opportunity to defend himself against the State's "most compelling evidence." It is not an exercise of reason to deny the defense an adequate opportunity to meet such evidence.

The guilty should be brought to account. Serious crime warrants serious punishment. But the threshold to punishment is guilt determined in a fair trial. That is the cornerstone of American justice. A chip was removed from that cornerstone in this case.