LEWIS, J.
Appellants, who consist of the Coalition Plaintiffs (“Coalition Appellants”) and the Romo Plaintiffs (“Romo Appellants”), appeal the trial court’s Order Denying Parties’ Motions for Attorneys’ Fees, arguing that the trial court erred in failing to adopt the private attorney general doctrine and in finding that Appellants waived their right to assert a claim for attorney’s fees. For the following reasons, we affirm the trial court’s order.
In 2012, Appellants filed a lawsuit, claiming that the congressional redistricting plan adopted by the Florida Legislature violated Article III, Section 20 of the Florida Constitution, by “favoring the Republican Party and its incumbents.” Article III, Section 20 was added to the Florida Constitution on November 2, 2010, following the general election and provides in subsection (a) that “[h]o apportionment plan Or individual district shall be drawn with the intent to favor or disfavor a political party or an incumbent— ” In July 2014, the trial court entered a Final Judgment, wherein it found that “districts 5 and 10 were drawn in contravention of the constitutional mandates of Article III, Section 20, thus making the redistricting map unconstitutional as drawn.”
In August 2014, both groups of Appellants moved for attorney’s fees, alleging entitlement pursuant to the- private attorney general doctrine. While acknowledging that Florida has always followed what has been termed the “American Rule,” under which parties are responsible for their own attorney’s fees unless a statute or contract provides otherwise, Appellants argued that the strong public interest aspect of the case warranted adoption of the private attorney general doctrine and an award of attorney’s fees in their favor. Appellees argued against the adoption of the doctrine and also contended that Appellants had waived their right to assert a claim for fees by failing to plead a claim for such and by failing to serve the Department of Financial Services with the *70 claim pursuant to section 284.30, Florida Statutes.,
Prior to ruling on the fee motions, the trial court entered an Order Approving Redistrieting Plan, finding that the “remedial plan [adopted by the Legislature during a special session] adequately addresses the’ constitutional deficiencies I found in the Final Judgment.” Appellants appealed, and we certified the trial court’s judgment for direct review by the Florida Supreme Court. See League of Women Voters of Fla. v. Detzner, 178 So.3d 6, 6 (Fla. 1st DCA 2014).
In October 2014, the trial court conducted a hearing on the fee motions. After hearing counsels’ argument, the trial court set forth in part:
Before we get to the costs, I am prepared to rule on the motion relative to the entitlement of attorneys’ fees on both sides. Let me tell you what I think.
I don’t think the plaintiffs are entitled to attorneys’ fees. I don’t find any basis for awarding fees based on litigation misconduct. I do find there are some procedural deficiencies, and I also — although I think you make a. good argument .in terms.of equity and policy,: public policy; relative to whether there should be an Attorney General, Private Attorney General concept, I think it’s not for me to override the general rule that says you don’t get it unless it’s .either statutory or contractual remedy.
If there is to be an exception to that rule of law, which I have to follow, it needs to be made by the legislature or by the Appellate Court. So you preserved that argument, maybe the appellate courts will agree with you and send it back to. do that if they disagree with the procedural deficiencies and my determination on that.
[[Image here]]
I do find that the plaintiffs are the prevailing party in this case because, the significant issue was found in favor of the plaintiffs.
In November 2014, the trial court entered its Order Denying Parties’ Motions for Attorneys’ Fees, which Appellants appealed.
While this appeal was pending in this Court, the Florida Supreme Court issued League of Women Voters of Florida v. Detzner, 172 So.3d 363, 368 (Fla.2015), on July 9, 2015, therein .reviewing the trial court’s “finding that the 2012 ‘redistricting process’ and the ‘resulting map’ apportioning Florida’s twenty-seven congressional districts were ‘taint[ed]’ by unconstitutional intent to favor the Republican Party and incumbent lawmakers.” The supreme court concluded that “the Legislature has failed to meet its burden to demonstrate that District 5, even as revised, passes constitutional muster.” Id. at 403. It further concluded that the trial court erred in rejecting Appellants’ challenge to Districts 13, 14, 21, 22, 25, 26, and 27. Id. at 407-12. The supreme court urged the Legislature to expedite the redrawing of the redistricting map. Id. at 416. In League of Women Voters of Florida v. Detzner, 179 So.3d 258, 259 (Fla.2015), the Florida Supreme Court noted that the case was before it for approval of a final congressional redistricting plan in accordance with its July opinion. It approved in full the “trial court’s ‘Order Recommending Adoption of Remedial Map.' ” Id. The approved plan is to be used in the 2016 congressional elections and thereafter until the next decennial redistricting. Id. Appellants sought appellate attorney’s fees before the supreme court, again advocating for adoption of the private attorney general doctrine in Florida. The supreme court has not yet ruled upon the issue as of the date of this opinion.
*71 Appellants argue, as they did below, that although Florida generally follows the American Rule, this Court should join other jurisdictions in recognizing the private attorney general doctrine as an exception to the American Rule and allow for attorney’s fees in their favor. The private attorney general doctrine has been described as follows:
[I]f a trial court, in ruling that a motion for fees upon this theory, determines that the litigation has resulted in the vindication of a strong or societally important public policy, that the necessary costs of securing this result transcend the individual plaintiffs pecuniary interest to an extent requiring subsidization, and that a substaiitial number of persons stand to benefit from the decision, the court may exercise its equitable powers to award attorney'fees on this theory.
Serrano v. Priest, 20 Cal.3d 25, 141 Cal. Rptr. 315, 569 P.2d 1303, 1314 (1977).
In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 241, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), a case relied upon by Appellees, the United States Supreme Court reversed an award of attorney’s fees to the respondents, Wilderness Society, Environmental Defense Fund, Inc., and Friends of' the Earth, who had sought to prevent the issuance of permits by the Secretary of the Interior that were required for the construction of the trans-Alaska oil pipeline. The Court explained that the Court of Appeals for the District of Columbia Circuit awarded attorney’s fees to the respondents based upon the court’s equitable powers and . the private attorney general doctrine. Id. In reversing, the Supreme Court set forth in part as follows:
In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys’ fee from the loser. We., are asked to fashion a far-reaching exception to this ‘American Rule’; but having considered its origin and development, we are convinced that it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner and to the extent urged by respondents and approved by the Court of Appeals.
[[Image here]]
Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorneys’ fees under some, but not others. But it would be difficult, indeed, for the courts, without legislative guidance, to consider some statutes important and others unimportant and to allow attorneys’ fees only in connection with the former. If the statutory limitation of right-of-way widths involved in this case is a matter of the gravest importance, it would appear that a wide range of statutes would arguably satisfy the criterion of public - importance and justify an award of attorneys’ fees to the private litigant. And, if any statutory policy is deemed so important that its enforcement must be encouraged by awards of attorneys’ fees, how could a court deny attorneys’ fees to private litigants in actions under 42 U.S.C.s 1983 seeking to vindicate constitutional rights? Moreover, should courts, if they were to embark. on the course urged by respondents, opt for awards to the prevailing party, whether plaintiff or defendant, or only to the prevailing plaintiff? Should awards be. discretionary or mandatory? Would there be a presumption operating for or against them in the ordinary case?
[[Image here]]
... But the [American] [R]ule followed in our courts with respect to attorneys’ fees has survived. It is deeply rooted in *72 our history and in congressional policy; and it is not for us to invade the legislature’s province by redistributing litigation costs in the manner suggested by respondents and followed by the Court of Appeals.
Id. at 247-71, 95 S.Ct. 1612.
With respect to state courts, in State Board of Tax Commissioners v. Town of St. John, 751 N.E.2d 657, 657 (Ind.2001), the Indiana Supreme Court explained that the taxpayers at issue, who proved the state’s real property assessment scheme unconstitutional, sought the adoption and application of the private attorney general doctrine, a “common law exception to the American rule.” The “Tax Court” granted the taxpayers’ request. Id. In reversing and in declining to adopt the private attorney general doctrine, the Indiana Supreme Court reasoned:
It is apparent that the General Assembly knows how to create statutory éx-ceptions to the American Rule, and that it has been willing to do so when it deems appropriate. Taking into account the plethora of statutory provisions already on the books, we are not persuaded that the judiciary needs to adopt a sweeping common-law exception to the American Rule for all public interest litigation.
A Slippery Slope. Moreover, we could easily create more problems than we would solve by adopting the' private attorney general doctrine'.... A review of these factors [that are'applied under the doctrine] suggests the swamp we might enter by awarding fees in this case.
To begin, societal importance is in the eye of the beholder. The subjectivity involved in ranking various public interests could make it difficult for prospective litigants to know in advance whether fee reimbursement would accompany a victory. Given this uncertainty, it is far from clear that the doctrine would serve as a significant incentive to those seeking to vindicate the public interest.
On the other hand, a broadly-applied American [R]ule exception could create a contrary risk. Fee-shifting could significantly alter the dynamics of public interest litigation in Indiana by attracting “bounty hunters” to the area.... We do hot question the motives of the attorneys in this case, but a decision for the Taxpayers could easily produce a host of'unintended consequences in future cases.
[[Image here]]
The second factor in the Tax Court’s test would call upon courts to decide whether private enforcement is necessary in any given action, and how great is the burden of the private action. We accept that private enforcement was necessary to effectuate change in this case, but many questions remain about the burden on the Taxpayers.
[[Image here]]
The third prong of the Tax Court’s test is perhaps the most problematic of all: did a significant number of Indiana citizens benefit from this decision? ...
[[Image here]]
The Bottom Line. Indiana’s courts regularly tackle tough issues, as we have in this very case. At the end of the day we are not convinced, however, of either the need for or the wisdom of adopting the private attorney general doctrine.
Id. at 661-64.
Similarly, in New Mexico Right to Choose/NARAL v. Johnson, 127 N.M. 654, 986 P.2d 450, 451 (1999), the New Mexico Supreme Court explained that the plaintiffs, who had sought injunctive relief against the Secretary of the Human Services Department and had argued that new rules for a medical assistance pro *73 gram violated their constitutional rights, urged the court to adopt and award them attorney’s fees pursuant to the private attorney general doctrine. The supreme court declined to do so, setting forth, “We agree with Plaintiffs that the private attorney general doctrine would be an additional exception to the American [R]ule. Thus, their argument requires a departure from established precedent. Plaintiffs have not justified such a departure.” Id. at 657, 986 P.2d 450. The supreme court noted the two important policies underlying the American Rule: (1) promoting equal access to the courts for the resolution of bona fide disputes and (2) tending to preserve judicial resources. Id. at 658, 986 P.2d 450. In declining to adopt the private attorney general doctrine, the supreme court reasoned in part:
{28} ... In the form advocated by Plaintiffs, application of the private attorney general doctrine would require the Court to- look beyond the proceedings before it- to determine which rights are of more societal importance than others, which classes of litigants have protected such rights, and which classes of people have benefitted from such protection. Plaintiffs have not shown that making -such broad determinations would involve “powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others.” .
[[Image here]]
{81} Finally, we are concerned that the adoption of the private attorney general doctrine advocated by Plaintiffs would erode the policies underlying the American [R]ule and move. New Mexico courts in the direction of the English system of awarding-attorney fees. We decline to adopt a new rule that moves New Mexico courts in this direction_ Unbridled judicial authority to “pick and choose” which plaintiffs and causes of. action merit an award of attorney fees under the private attorney general doctrine would not promote equal access to the courts for the resolution of good •faith disputes inasmuch -as it lacks sufficient guidelines to prevent courts from treating similarly situated parties differently and could easily result in decisions that favor a particular class of private litigants while unduly discouraging the government from mounting a-good faith defense. Such authority also would not promote the goal of conserving judicial resources inasmuch as it calls for the 'courts to engage in a fact-specific reexamination of the merits of a case to determine the significance and scope of the rights that have'been protected....
Id. at 663, 986 P.2d 450; see also Doe v. Heintz, 204 Conn. 17, 526 A.2d 1318, 1323-26 (1987) (noting that in “the absence of legislative authority ... we have declined to permit any monetary award against the state or its. officials” and explaining that “we agree.with the trial court .that it is inappropriate for the judiciary to establish under the private attorney general doctrine a broad rule, permitting such fees whenever a private litigant has at substantial cost to himself succeeded in enforcing a significant social policy that may benefit others”); Nemeth v. Abonmarche Dev., Inc. 457 Mich. 16, 576 N.W.2d 641, 653 (1998) (noting that “[t]he Supreme Court’s analysis in Alyeska Pipeline comports with our holding in Popma and with the observation that the Legislature knows -how to provide for attorney fees when enacting a statute and has done so on many occasions”); Hoke Cty. Bd. of Educ. v. State, 198 N.C.App. 274, 679 S.E.2d 512, 519 (2009) (rejecting the argument that the trial court erred in holding that the private attorney general doctrine was inapplicable and setting forth, “as there is no legislative authority for the private attorney general *74 doctrine, ■ plaintiffs’ argument must fail”); Stephenson v. Bartlett, 177 N.C.App. 239, 628 S.E.2d 442, 445 (2006) (noting that the underlying case addressed a state legislative redistricting plan and affirming the trial, courts order denying the plaintiffs’ motion for attorney’s fees while noting that the “large majority of our sister states that have considered the issue.have declined to adopt the private attorney general doctrine” and that frequently cited as the reason for declining to adopt the doctrine “is. that where the legislature has a policy of selecting special situations where attorney fees may be awarded, ‘it is inappropriate for the judiciary to establish under the private attorney general doctrine a broad rule permitting such fees whenever a private litigant has of substantial cost to himself succeeded in enforcing a significant social policy that may benefit others’”) (citation omitted). But see Arnold v. Ariz. Dep’t of Health Servs., 160 Ariz. 593, 775 P.2d 521, 537 (1989) (“in banc”) (adopting and applying the private attorney general doctrine and noting that the litigation involved the Arizona Center for Law in the Public Interest filing suit on behalf of chronically mentally ill individuals who allegedly did not receive adequate community mental health services from the state); Serrano, 141 Cal.Rptr. 315, 569 P.2d at 1315 (holding that the trial court acted within the proper limits of its inherent equitable powers when it concluded that reasonable attorney’s fees should be awarded to the plaintiffs’ attorneys under the private attorney general theory and noting that in the underlying litigation, the lower tribunal held that the then-existing California public school financing system was invalid as in violation of state constitutional provisions guaranteeing equal pro, tection of the laws); Miller v. EchoHawk, 126 Idaho 47, 878 P.2d 746, 748 (1994) (“An award of attorney fees under the Private Attorney- General Doctrine will be reversed only on a showing of an abuse of discretion by the trial court.”); Hellar v. Cenarrusa, 106 Idaho 571, 682 P.2d 524, 531 (1984) (holding that a reapportionment statute was unconstitutional and applying the private attorney general doctrine); Montanans for Responsible Use of the Sch. Tr. v. State, ex rel. Bd. of Land Commr’s, 296 Mont. 402, 989 P.2d 800, 811-12 (1999) (awarding attorney’s fees under the private attorney general doctrine where the appellant litigated important public policies that were grounded in Montana’s Constitution, the State did not dispute the necessity of private enforcement of Montana’s Constitution or the magnitude of the appellant’s consequent burden, and the litigation clearly benefited a large class of Montana citizens, i.e., all Montana citizens interested in Montana schobls).
We agree with and adopt the reasoning of those courts that have declined to adopt the private attorney general doctrine. We conclude, as did they, that the policy judgments underlying the doctrine are those that should be made by the legislative branch of government, not the judicial branch. See Fla. House of Representatives v. Crist, 999 So.2d 601, 613 (Fla.2008) (noting that the Legislature’s exclusive power encompasses questions of fundamental-policy). Appellants’ attempt to liken the doctrine to what have been considered exceptions to the American Rule is unavailing. Unlike the wrongful act doctrine, the private attorney general doctrine has nothing to do with the administration of- court proceedings. Nor is it similar to the common fund doctrine, which allows for an award of fees from- a fund or an estate that has benefitted by the rendering of legal services. See Hurley v. Slingerland, 480 So.2d 104, 107 (Fla. 4th DCA 1985). While Appellants argue that-the number of cases legitimately justifying *75 fees under the doctrine will be small, that is not guaranteed given that what constitutes the public interest will inevitably vary by court.
In reaching our conclusion, we acknowledge that this case is unique in that it was those involved with the Legislature who allegedly violated the public interest. However, we reject Appellants’ arguments that we must adopt the private attorney general doctrine because the Legislature will not statutorily authorize attorney’s fees in redistricting cases and because Florida’s citizens obtained a significant benefit as a result of the redistrieting lawsuit. Not only is the argument about the future actions of" the Legislature based upon speculation, but it ignores the fact that if the Legislature refuses to act upon an issue that is supported by the public will, Florida’s citizens hold the' power to vote their representatives out of office. Although Appellants contend that it was the public will that led to the adoption of Article III, Section 20, nothing in that provision or any related amendment expressly changed Florida’s adherence to the American Rule in the context of redistricting lawsuits. For these reasons, ye find no error in the trial court’s denial of Appellants’ attorney’s fee motions.
In their second issue on appeal, Appellants assert that, contrary to the trial court’s determination, no procedural barriers prevented their recovery of attorney’s fees in this case. We disagree and hold that even if we were persuaded to adopt the private attorney general doctrine, Appellants waived their fee claim. In Stockman v. Downs, 573 So.2d 835, 837 (Fla.1991), the Florida Supreme Court explained that a claim for attorney’s fees must be pled and that failure to do so constitutes a ■ waiver of the claim. We reject Appellants’ argument that they could not have pled any alleged entitlement, to attorney’s fees under the private attorney general doctrine in their complaint. Appellants also fail to convincingly explain why they could hot have amended their complaint to include an attorney’s fee claim under the doctrine as the case against Appellees progressed and as more facts developed. See Flagship Resort Dev. Corp. v. Interval Int’l Inc., 28 So.3d 915, 924 (Fla. 3d DCA 2010) (holding that the trial court did not abuse its discretion in granting the appellee leave to amend its answer to assert a claim for attorney’s fees and concluding that while it is true that a claim for attorney’s fees must be pled pri- or to the judgment to avoid a waiver, no waiver occurred because of the leave to amend); Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708, 712 (Fla. 4th DCA 2002) (“The plaintiffs here were required to set forth their claim for attorney’s fees in a pleading. The only way for them to have raised the issue two weeks before trial was to obtain ‘leave of court’ through a motion to amend their complaint or ‘by the written consent of the adverse party.’ ”) (Citation omitted).
While the Romo Appellants contend that they satisfied’ the pleading requirement by including a general claim for attorney’s fees in their complaint, the trial court struck that claim, while noting that the Romo Appellants' identified in their response to the motion to dismiss section 57.105, Florida Statutes, as the exclusive basis of their claim for fees. At no time did the Romo Appellants re-plead a claim for fees. Instead, both that group and the Coalition Appellants waited until the trial court’s final judgment was entered to move for fees under the private attorney general doctrine.
Moreover, even if it could be said that the Romo Appellants’ general claim for fees sufficed to put Appellees on notice, neither they nor the Coalition Appellants *76 satisfied section 284.30, Florida Statutes, which provides in part that “[a] party to a suit in any court, to be entitled to have his or her attorney’s fees paid by the state or any of its agencies, must serve a copy of the pleading claiming the fees on the Department of Financial Services.” Contrary to Appellants’ contention, the fact that the Department of Financial Services was served with a copy of the post-judgment motions for fees does not excuse Appellants’ failure to abide by section 284.30. As we have explained, “giving the notice required by section 284.30 is a condition precedent to the recovery of attorney’s fees against the state.” Hale v. Dep’t of Revenue, 973 So.2d 518, 522 (Fla. 1st DCA 2007).
Based upon the foregoing, we affirm the trial court’s Order Denying Parties’ Motions for Attorneys’ Fees.
AFFIRMED.
SWANSON, J., concurs; THOMAS, J., concurs with opinion.