974 P.2d 506

**Dave H. WARDEN, Claimant–Appellant,**

**v.**

**IDAHO TIMBER CORP., Employer, and Argonaut Insurance Co., Surety, Defendants–Respondents.**

**No. 23777.**

Supreme Court of Idaho, Boise, December 1998 Term.

March 3, 1999.

Dave H. Warden, Boise, pro se appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Glenna M. Christensen argued.

SILAK, Justice

This is an appeal from an Industrial Commission (Commission) decision denying disability benefits and medical expenses incurred by an employee who claimed that he was injured at work. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

##### 1. The injury at Idaho Timber Corp.

While working for respondent Idaho Timber Corporation (Idaho Timber) on September 22, 1995, appellant Dave H. Warden (Warden) injured his back while transferring lumber from a conveyer. After reporting his injury to the foreman, he was sent to a medical clinic where Dr. Quinn diagnosed his injury as lumbar strain. Dr. Quinn prescribed medication and rest at home and told Warden to return for a recheck after 3–4 days. At the recheck on September 25, 1995,

Warden again complained of pain consistent with low back strain. After another diagnosis of low back strain, Warden returned to work in a light-duty capacity and was assigned to various tasks including sweeping and working with a wood shredder.

Despite the modification of his duties, his back pain continued, and he again visited a doctor who sent him back to work. Upon returning to work, Warden informed his supervisor that he could not continue his employment with Idaho Timber because he could not continue performing his assigned tasks due to the pain in his back. His supervisor agreed, and his employment was terminated. Following Warden's termination, Idaho Timber's insurance company, respondent Argonaut Insurance Co. (Argonaut), provided for two additional doctor visits and then discontinued benefits after the doctors diagnosed Warden's injury as a temporary strain.

##### 2. Warden's prior medical history

In November 1973, Warden was injured while employed with Missouri Beef Packers, Inc. Dr. Johnson, the treating orthopedic surgeon, performed a surgery in December 1975, consisting of a laminectomy and two-level fusion from L5 to S1. In August 1976, Dr. Johnson released Warden with a 12% impairment with no complaints in regard to his back.

In August 1979, Warden was injured while working for a television and appliance retail store. As a result of his injury, Dr. Kiefer performed a lumbar laminectomy at the L4–L5 level beneath the fusion. Dr. Kiefer reported a good recovery, but recommended less strenuous employment. In February 1980, Dr. Kiefer rendered a 20% impairment and specified that the impairment was in addition to anything that Warden may have received for his first lumbar laminectomy. In October 1980, Warden returned to Dr. Kiefer complaining of walking difficulty, low back pain, and pain and numbness in his right leg.

In June 1981, a panel evaluation was conducted at the request of the surety. The panel of doctors noted Warden's low back pain, pain and numbness of his right leg,

back spasms, difficulty standing, and bowel problems.

In January 1994, Idaho Vocational Rehabilitation referred Warden to Dr. Weiss for evaluation due to his continuing low back problems from the 1973 and 1979 injuries, and for an elbow injury he sustained while working in 1991. At the 1994 examination, Warden complained of a loss of feeling in his right foot. The doctor at that time limited Warden to light work. At that examination, Warden was barely able to lift three pounds because of the low back pain in the right lower lumbar region. Warden advised the doctor that the back problems were ongoing since 1973.

### 3. Idaho Timber pre-employment physical

In September 1995, Warden was hired by Idaho Timber. On September 20, 1995, Warden had a pre-employment physical conducted by Dr. Quinn, who had Warden perform a number of range of motion exercises but no lifting. Dr. Quinn determined that Warden was "physically qualified" for the position. He was aware of Warden's prior surgeries but did not discuss any restrictions he might have.

### 4. Medical treatment not covered by Idaho Timber/Argonaut

Warden, dissatisfied with medical treatment provided by Idaho Timber and Argonaut, also sought treatment from the Veterans Administration Hospital for his medical problems. Following examinations and tests by the Veterans Administration doctors, Warden had surgery on the L3–4 level of his back in June 1996.

### B. Procedural Background

In April 1996, Warden filed a Workers' Compensation Complaint claiming continued medical care and total temporary disability benefits. His complaint claimed that Idaho Timber and Argonaut had unreasonably denied him reasonably necessary medical care and total temporary disability benefits. Idaho Timber and Argonaut, in their answer to the complaint, asserted that Warden's medical problems were not causally related to the

September 1995 accident. Instead, they asserted that his problems and continued medical expenses were due to two prior injuries and surgeries to the L5–S1 and L4–5 levels of his back.

In January 1997, following a hearing, a Commission referee found that Warden's September 1995 injury would have reached maximum medical improvement on December 14, 1995, and further that the injury did not cause the need for Warden's June 1996 surgery. Consequently, the referee determined that any total temporary disability benefits and medical care incurred after December 14, 1995, were not related to the September 1995 accident and thus were not the responsibility of Idaho Timber and Argonaut. The Commission adopted the referee's findings. Warden appeals the Commission's March 1997 order, and also seeks review of an October 1997 order refusing to augment the record with "forensic evidence" of an allegedly forged authorization for release of medical records.

## II.

### ISSUES ON APPEAL

1. Whether the Commission erred in finding that Warden's need for surgery in June 1996 was not causally connected to the September 1995 injury.

2. Whether the Commission erred in refusing to augment the record with "forensic evidence" of an allegedly forged authorization for release of medical records.

## III.

### ANALYSIS

### A. Standard Of Review

A decision of the Commission will be upheld if there is substantial and competent evidence to support the decision. *See Reedy v. M.H. King Co.,* 128 Idaho 896, 899, 920 P.2d 915, 918 (1996). Substantial and competent evidence is "more than a scintilla of proof, but less than a preponderance. In short, it is relevant evidence which a reasonable mind might accept to support a conclu-

sion." *Matter of Wilson,* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). This Court will not try the matter anew by weighing the evidence and acting similar to a trial court, nor is the Court concerned with whether it would have reached the same conclusion based upon the evidence presented. *See Riggs v. Estate of Standlee,* 127 Idaho 427, 429, 901 P.2d 1328, 1330 (1995). However, the Court exercises free review of the Commission's conclusions of law. *See id.*

**B. Substantial And Competent Evidence Exists To Support The Commission's Finding That Warden's Need For Surgery In June 1996 Was Not Causally Connected To The September 1995 Injury.**

Warden argues that the Commission erred in finding that his need for back surgery in June 1996 was not causally connected to the September 1995 injury he suffered at work. Consequently, he argues that the Commission erred in finding that he is not entitled to medical care and total temporary disability benefits after December 14, 1995.

The Commission adopted the findings of fact of the referee which included a finding that the June 1996 surgery (an L3–4 laminotomy medial facetectomy and foranimotomy) was performed because of degenerative retrolethesis, not due to a new disk herniation. The referee found that there was no evidence to support Warden's claim that the need for surgery was causally connected to the June 1995 accident.

█ Evidence to support the Commission's finding that the June 1996 surgery was due to retrolethesis and not the 1995 accident is supported by medical records of prior surgeries for back problems and evidence that Warden was not pain free for over fifteen years, as he told the Veterans Administration and Dr. Quinn, but rather that he has had a long history of low back pain.

In June 1981, a panel evaluation noted Warden's low back pain, pain and numbness of his right leg, back spasms, difficulty standing, and bowel problems. Further, at Dr. Weiss's 1995 examination, Warden complained of back problems going back to 1975

including weakness in his legs. At that examination, Warden was barely able to lift three pounds because of the low back pain in the right lower lumbar region. When Dr. Weiss again examined Warden in 1995, he concluded that Warden's problems were similar to his 1994 symptoms and that Warden was actually doing better in 1995 than he was in 1994. In short, Dr. Weiss concluded that Warden's work injury was a strain/aggravation of the underlying injury and that any additional treatment after December 14, 1995 would be in conjunction with the underlying condition rather than the 1995 accident.

The referee also found that Warden's low back strain would have reached maximum medical improvement by December 14, 1995, twelve weeks post-accident. Moreover, according to the testimony of Dr. Quinn, all of Warden's complaints were consistent with low back strain, the predominant symptom of which is complaints of pain. He further testified that six weeks would not be an unusual amount of time for severe back strain to produce pain.

The Commission did consider a letter from Dr. Emmons, who had recommended Warden's June 1996 surgery, in which he expressed his opinion that Warden's necessity for surgery was caused by the 1995 Idaho Timber accident. However, the Commission considered his statements in light of his lack of knowledge of Warden's prior medical history and statements made to Dr. Emmons by Warden that he had experienced no back problems for fifteen years.

Although Warden points to medical evidence in the record which supports his argument that the 1995 work-related accident caused the need for the June 1996 surgery, this Court will not try the matter anew by weighing the evidence and acting similar to a trial court, nor is the Court concerned with whether it would have reached the same conclusion based upon the evidence presented. *See Riggs,* 127 Idaho at 429, 901 P.2d at 1330 (1995) (citing *Pomerinke v. Excel Trucking Trans.,* 124 Idaho 301, 305, 859 P.2d 337, 341 (1993)).

Thus, based on the evidence set forth above, we hold that there is substantial and competent evidence to support the Commission's decision that Warden's need for sur-

**458**

gery to the L3–4 region of his back was not causally related to his injury sustained while working at Idaho Timber in 1995.

**C. The Commission Did Not Err In Refusing To Augment The Record With "Forensic Evidence" Of An Allegedly Forged Authorization For Release Of Medical Records.**

In an October 21, 1997 order, the Commission refused to augment the record with what Warden alleges is "forensic evidence" of a forged authorization for release of medical records. In denying the request, the Commission concluded that the claimant had executed at least one, and possibly two authentic medical record releases and that the issue of whether a third was forged was irrelevant.

The respondents first argue that the Court should not address this issue because Warden did not file an appeal from the order, nor did he amend the appeal to include the post-hearing order. This argument is without merit.

Idaho Appellate Rule 17(e)(1)(C) provides that the notice of appeal "shall designate the final judgment, order or decree appealed from which shall be deemed to include, and present on appeal ... [a]ll interlocutory or final judgments, orders and decrees entered *after* the judgment, order or decree appealed from." Since Warden appeals from an October 21, 1997 order, entered after the March 13, 1997 order denying him medical and disability benefits, the notice of appeal filed for the March 13, 1997 order covers his appeal of the October 21, 1997 order under I.A.R. 17(e)(1)(C). Therefore, the order denying Warden's motion to augment the record is reviewable on appeal.

The respondents also argue that the Commission properly denied Warden's motion on the ground that forensic evidence of forgery of the September 22, 1996 authorization form is irrelevant. In denying the motion, the Commission stated: "[s]ince the record shows an authentic authorization form prepared by Claimant, any other form would be irrelevant to such authorization. Thus, the alleged forgery is likewise irrelevant to the properly prepared authorization release form." Because Warden does not dispute the authenticity of at least one additional authorization form, evidence of the alleged forgery is unnecessary for a review of the Commission's decision. Thus, although the October 21, 1997 order is reviewable, we hold that the Commission properly denied Warden's motion to introduce forensic evidence.

**IV.**

**CONCLUSION**

We hold that the Commission's finding that Warden's need for surgery in June 1996 was not causally related to the September 1995 injury is supported by substantial and competent evidence.

We further hold that the Commission's October 21, 1997 order denying Warden's motion to augment the record is reviewable on appeal, and that the Commission correctly denied the motion.

Accordingly, the decision and order of the Commission are affirmed denying medical expenses and disability benefits to Warden. The Commission's order denying Warden's motion to augment the record is also affirmed. No attorney fees are awarded on appeal. Costs are awarded on appeal to respondents.

Chief Justice TROUT, Justices SCHROEDER and WALTERS, and Justice Pro Tem JOHNSON, CONCUR.