999 P.2d 910

**Larry K. BARRETT, Claimant–Appellant,**

v.

**NAMPA FIRE DEPARTMENT, City of Nampa, Employer, and Idaho State Insurance Fund, Surety, Defendants–Respondents.**

No. 25298.

Supreme Court of Idaho,
Boise, February 2000 Term.

April 28, 2000.

Kenneth F. White, Nampa, for appellant.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Bridget A. Vaughan argued.

KIDWELL, Justice

This appeal from the State Industrial Commission involves a fireman who fell into

an irrigation ditch while on the job. The Industrial Commission denied the claim on the basis that the claimant's injuries were pre-existing. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

On the evening of July 3, 1996, claimant Larry K. Barrett (Barrett) of the Nampa City Fire Department (Fire Department) responded with two other firemen to a brush fire in Nampa. Upon arriving, the firemen began pulling water hoses off the fire truck to contain the fire. As the firemen entered the field, each in turn fell into an irrigation ditch which was covered with weeds. Barrett testified that he fell into the ditch head-first, hitting his head and knocking his helmet off. When the fire was extinguished, Barrett entered the following into the daily log book: "Kelsar fell in ditch on fire cut head, Barrett fell in ditch and hit head and snapped neck with fall, Ebbers fell in ditch didn't seem to have and [sic] problems."

At the time of the injury, Barrett had been employed by the Fire Department for twenty-one years. He was a battalion chief and was responsible for keeping a log of daily activities.

In 1993, Barrett had been involved in an automobile accident which injured his knee and back. Because of persistent neck stiffness and restricted left-arm movement, Barrett sought chiropractic cervical adjustments periodically. On May 31, 1996, Barrett consulted with Dr. Walker, a chiropractor, concerning the onset of arm tingling and neck pain. On July 3, 1996, prior to his falling into the ditch, Barrett met with Dr. Gary D. Botimer who had operated on Barrett's knee following the car accident. Dr. Botimer's notes of that visit relate that Barrett was complaining of pain in his neck and pain down his forearms. Dr. Botimer examined Barrett and told him that if the pain persisted Barrett should see Dr. Michael Djernes, a neurologist.

A week later, Barrett went to see Dr. Djernes concerning pain in his neck and numbness and tingling in some of his fingers. Both the doctor's and the nurse's notes indi-

cate that Barrett could not identify any specific event which could have caused his pain.

On October 18, 1996, Barrett filed a Notice of Injury and Claim for Benefits relating to pain in his neck and arms. Around the same time, Barrett filled out a Supervisor's Accident Report form. On July 27, 1997, Barrett filed a Worker's Compensation complaint, listing the Nampa Fire Department and the State Insurance Fund (respondents) as his employer and its insurance carrier. A hearing was held on February 8, 1998. On September 4, 1998, the hearing referee entered a recommendation that Barrett's claim be denied because Barrett had failed to prove that his injuries resulted from his July 3, 1996 fall. The Industrial Commission adopted the referee's findings and entered an order denying the claim on November 10, 1998. Following the Industrial Commission's denial of his motion for reconsideration, Barrett appealed.

## II.

### STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Kessler ex rel. Kessler v. Payette County*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence pre-

sented. *See Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

### III.

### ANALYSIS

**A. The Decision Of The Industrial Commission To Deny Barrett's Claim Was Supported By Substantial And Competent Evidence.**

█ The Industrial Commission concluded that Barrett had not provided sufficient evidence to establish that the pain in his neck and arm was the result of his fall on July 3, 1996. Barrett claims that this conclusion is not supported by substantial and competent evidence.

Contrary to Barrett's claim, there is substantial and competent evidence to support the Industrial Commission's conclusion. While the record is replete with support for this conclusion, three examples are particularly clear.

First, it is well documented that Barrett had suffered from neck and arm pain prior to his fall on July 3, 1996. Barrett's testimony from the hearing was that in the afternoon of July 3, 1996, he saw Dr. Miller about a minor skin rash. While in the office, Barrett met Dr. Botimer who shared office space with Dr. Miller. Barrett sought Dr. Botimer's advice concerning his arm tingling. While Barrett maintained that Dr. Botimer did not examine him, the doctor's chart notes that "Larry was in with pain in his neck. Flexation of his neck causes pain going down to the lateral aspect of the forearm and down to the fourth and fifth fingers." Barrett also testified that he had been x-rayed during that visit. The x-rays revealed degenerative changes. The x-ray technologist recorded that Barrett complained of "pain down both arms. Numbness & tingling in left arm." Barrett's complaints of neck and arm pain hours *before* he fell into the ditch lend support to the Industrial Commission's conclusion that Barrett had failed to prove the fall caused his injuries.

The facts surrounding Barrett's visit to Dr. Djernes' office, one week after the fall, provide the most compelling evidence to support the Industrial Commission's findings. Barrett went to see Dr. Djernes on July 10, 1996. The nurse's notes of that visit reflect that "[p]atient here for check of pain in both forearms and left hand and hand numb and tingling at times. Problem since 5-15-96. No apparent injury." On cross-examination Barrett admitted that at that appointment he could not recall any incident which could have caused the injury.

Additionally, the doctor's notes from that same visit record that "[p]atient states that since May he has been experiencing pain in his forearms. This is particularly bothersome on the left side. He initially thought that he had tendonitis.... He denies any injury which may have triggered or precipitated his symptoms." As brought out more clearly on cross-examination, Barrett testified that he could not remember, even when prodded by the doctor, about an injury he received one week earlier.

On October 11, 1996, Barrett went to see Dr. Joseph M. Verska, a neurologist. Barrett testified that prior to the examination, he filled out a questionnaire. When asked "When did this most recent episode of neck pain begin?" Barrett responded "May of '96." Dr. Verska's notes for the visit state, "Larry works as a fire fighter and had this left arm numbness and tingling that seems to go into his long ring and small finger since an injury in May of 1996."

When pressed, Barrett admitted that after his claim was denied, he contacted Dr. Verska and had him change the dates in his notes. Barrett stated:

Yes I did. That was after workmen's comp denied it and said there was a problem with the date. I went back and talked with him – I said – all of them I went back and talked to them. At that time – I don't remember the exact date that that was and said, I told them we have a problem, because they say May is causing the problem. And I said "I told you it was in July." As far as I knew everybody went back and changed the date to July. Dr. Verska did. He made several references to that.

Thus, the record supports the Industrial Commission's conclusion that Barrett failed to prove that his injuries were caused by his fall into the ditch. First, he was seen by Dr. Botimer for pain in his neck and arms hours *before* he fell. Then a week later he could not remember any injury which could have caused the pain, and stated that the pain had begun in May of 1996. Finally, he admitted that after his claim was denied he contacted Dr. Verska and "the others" and had them change the dates in their notes.

Third, the Industrial Commission determined that the only medical testimony Barrett provided to prove the cause of his injury was from Dr. Verska, at a post-hearing deposition. At the deposition, Dr. Verska was questioned:

Q. Without the surgery that you feel that he should submit to, is there any way that you can distinguish between the percentage of preexisting and what percentage of impairment the accident caused?

A. It's oftentimes very difficult to do so. In these types of situations usually if the – usually what I do is if the car – if an accident or traumatic injury caused the symptoms that require surgery, I try to attribute most of that to the injury.

Q. Okay.

A. Someone could make an argument saying five percent or – you know, these kind of interpretations of how much is preexisting is difficult for me to do, but if the gentleman hadn't had the injury he wouldn't have required the surgery, therefore, it would have been no big deal.

Q. Okay. So you –

A. I apportion almost all of it to the injury.

Q. Okay.

A. If not all.

Q. Can we be more specific, sir?

A. One hundred percent to the injury of July '96.

On cross-examination, however, Dr. Verska admitted that he had not been informed of Barrett's preexisting injuries. He responded that he had not been told of Barrett's injury from the car accident, nor of Barrett's repeated visits to the chiropractor or the other physicians. Finally, he was asked, "Dr. Verska, is it possible if you were given the opportunity to review Mr. Barrett's medical records documenting treatment he received from various medical providers prior to the time you had an opportunity to examine him, that your opinion with respect to causation might change?" To which Dr. Verska replied, "That's correct."

Therefore, the Industrial Commission had sufficient reason to conclude that the only medical witness to testify as to the causation of the injury had based his opinion on substantially less than all of the facts. This testimony supports the Industrial Commission's finding that Barrett had failed to prove his injury was caused by his fall on July 3.

This evidence supports the finding of the referee and the order of denial issued by the Industrial Commission. The decision of the Industrial Commission is affirmed.

## IV.

### CONCLUSION

The decision of the Industrial Commission to deny Barrett's claim is supported by substantial and competent evidence. Therefore the decision of the Industrial Commission is affirmed. Costs are awarded to respondents.

Chief Justice TROUT and Justices SILAK, SCHROEDER, and WALTERS, concur.