18 P.3d 211

**Bart JENSEN, Claimant–Appellant, Cross–Respondent,**

v.

**CITY OF POCATELLO, Employer and State Insurance Fund, Surety, Defendants–Respondents, Cross–Appellants.**

No. 25595.

Supreme Court of Idaho, Pocatello, September 2000 Term.

Dec. 15, 2000.

Rehearing Denied Feb. 15, 2001.

Lowell N. Hawkes, Chtd., Pocatello, for appellant.

Dalling & Dalling, Idaho Falls, for respondents. V. Dean Dalling, Jr. argued.

KIDWELL, Justice.

This workers' compensation case results from injuries received by an employee of the Pocatello Sanitation Department. Bart Jensen suffered total kidney failure two days after ingesting a pain medication provided by his supervisor. The referee for the Industrial Commission found that Jensen had failed to prove that the pain medication was the cause of the kidney failure. The Industrial Commission adopted the recommendation of the referee and Jensen appealed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The record on appeal indicates that Bart Jensen began working for the City of Pocatello in the sanitation department in 1985. With the exception of a resolved back injury in 1987, Jensen had no significant health problems prior to May 1, 1997. On May 1st 1997, at 7:00 a.m., Jensen reported for work at the Sanitation Department. He was in good health with no noticeable health problems. At 10:00 a.m. Jensen drank a large Coke and was generally well hydrated. At lunch Jensen had a drink of water. He urinated twice prior to 2:00 p.m. Around 2:30 p.m. Jensen returned to the shop. At that time, the floor of the shop was being cleaned with a harsh chemical that can burn the skin and remove paint from metal surfaces, called container soap.

Upon entering the shop, Jensen informed his supervisor, Kirt Malm, that he had a slight headache. The supervisor instructed Jensen to take two "Pain–Off" tablets from the first-aid cabinet in the shop. Jensen had never taken Pain–Off medication prior to this time. Within minutes of taking the medication, Jensen began experiencing severe stomach cramps. The cramping continued and spread to his back below the rib cage and on both sides. Jensen testified that the pains were shooting "across the end of my spine." As the pain spread, Jensen asked a co-worker to call an ambulance.

After retrieving the package of Pain–Off medication, Malm drove Jensen to the hospital in Malm's City truck. En route to the hospital Malm was concerned that he should have called the ambulance because of Jensen's obvious distress. Jensen was admitted to the emergency room. He complained that within five minutes of having taken the Pain–Off he experienced chest tightness, shortness of breath and pain in his lower back. The emergency room doctor, Dr. David Barnett diagnosed Jensen as having a medication reaction. Jensen was given a 50 mg. injection of Benadryl. After a one-hour observation period, Jensen was released from the hospital and was taken home by Malm around 4:30 p.m.

When Jensen returned home, he still felt sick and was not able to keep food down. He took some "Motrin" for pain but vomited it up shortly after taking it. The next day, Jensen's condition continued to deteriorate. He could not keep food or drink down and vomited several times. Jensen did not go to work that day. He continued to feel sicker and weaker as the day progressed, and by evening his wife began to notice that the whites of his eyes had taken on a yellow-orange color.

The next morning, Saturday, May 3, 1997, Jensen's wife had difficulty waking him. Jensen's wife took him to see a friend who told her that Jensen looked like he should go immediately to the hospital. While driving home, Jensen and his wife encountered Malm who also noted Jensen's yellow color and recommended that Jensen return to the hospital. Jensen returned home to bathe before returning to the hospital. While cleaning up he urinated for the first time since Thursday afternoon, and noticed that his urine was black.

Jensen returned to the emergency room and was seen this time by Dr. Richard Hearn. Jensen was unable to urinate and the hospital staff was unable to get a urine sample even with a catheter. Urine output was barely increased by three liters of fluid given to Jensen intravenously. The doctor determined that Jensen had suffered a total kidney shutdown. Jensen was treated with hemodialysis and steroids. The following day a device was surgically implanted into Jensen's chest to connect him to the dialysis machine.

Jensen was hospitalized from May 3 to May 9, 1997, with dialysis three days a week. He lost 20 pounds between May 3 and May 23, 1997, and suffered nausea and vomiting. After another course of steroids, Jensen's kidney function eventually returned. Jensen began to function without dialysis in June of 1997. On July 14, 1997, Jensen was released to return to work without restrictions. Jensen returned to work on July 18, 1997, but complained of severe fatigue.

Butch Chandler, the Sanitation Operation Supervisor, had discarded the remaining Pain–Off medication on May 1st or 2nd. It is undetermined in the record whether any Pain–Off tablets from the same box were preserved.

On December 23, 1997, Jensen filed a workers' compensation complaint with the Industrial Commission. The City of Pocatello and its surety the Idaho State Insurance Fund, (herein collectively the City) answered the complaint on January 8, 1998, denying that the injury resulted from a work-related accident.

On July 9, 1998, Jensen was examined by Dr. Nagraj Narasimhan at the request of the City. Dr. Narasimhan concluded that there was no causal connection between Jensen's ingestion of Pain–Off and his illness.

On September 3, 1998, a hearing was held before the Industrial Commission's referee. At the hearing, Jensen, his wife, Malm and Chandler all testified. The deposition of Dr. Hearn was taken on September 9, 1998, and that of Dr. Narasimhan was taken on September 15, 1998. Both depositions were submitted to the referee that same month.

The referee filed his Findings of Fact, Conclusions of Law and Recommendation on April 19, 1999. The referee concluded that although Jensen had proven that his "medical reaction [was] causally related to his work," Jensen had "failed to establish his renal failure [was] causally related to his work." In his findings, the referee first considered that testimony of the City's expert Dr. Narasimhan. After discussing the many alternative theories for Jensen's illness produced by Dr. Narasimhan, the referee concluded that "Defendants' alternate causation theories are unpersuasive."

The referee then discussed the testimony of Dr. Hearn. Dr. Hearn testified that "In the list of my speculation of what might have caused the renal failure, then [the Pain–Off] would be at the top of that list of my speculation. I don't know of anything that would be higher, but I have no evidence to support that it was the cause." However, Dr. Hearn testified that because chemical testing of the Pain–Off was impossible (because it had been destroyed by Chandler) he was not able to determine to a reasonable degree of medical probability that the Pain–Off had caused Jensen's renal failure.

The referee concluded:

The non-expert evidence and much of the expert evidence herein indicate a causal relationship between Claimant's ingestion of Pain–Off at work and his renal failure. Defendants' alternate causation theories are unpersuasive.... [I]nasmuch as Dr. Hearn repeatedly and expressly refused to opine to a reasonable degree of medical probability that Claimant's renal failure was caused by his Pain–Off ingestion and/or solvent exposure at work, *Hart* [*v. Kaman Bearing & Supply,* 130 Idaho 296,

939 P.2d 1375 (1997) ] requires the conclusion that Claimant has failed to establish by expert medical testimony that his renal failure was work-related. (R. p. 29)

The referee then recommended that Jensen be awarded damages for the medical reaction of May 1st, but denied damages resulting from the subsequent kidney (renal) failure. The Industrial Commission adopted the findings and conclusions of the referee on April 19, 1999. Both Jensen and the City appeal from the order of the Industrial Commission.

## II.

## STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson )*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Kessler ex. rel. Kessler v. Payette County*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

## III.

## ANALYSIS

A. **The Industrial Commission Referee Correctly Characterized Dr. Hearn's Testimony.**

The City claims that the following findings of fact made by the Industrial Com-

mission referee are not supported by substantial and competent evidence.

The Industrial Commission referee found in its finding of fact number 29 that:

Dr. Hearn testified that acute renal failure in a non-hospitalized individual is most likely caused by autoimmune disease, infection, or ingestion of a toxic food or medicine. He testified that there was no evidence of autoimmune disease or infection to account for Claimant's renal failure, and that it was consistent with toxic exposure.

In its finding number 34, the referee found that:

Dr. Hearn's testimony virtually eliminates all other possible causes and establishes, by elimination, that Claimant's May 1, 1997, ingestion of medication at work more likely than not produced a toxic event precipitating his acute renal failure.

In his deposition, Dr. Hearn testified that:

A. I do not have a specific checklist for workers, but in general my checklist for people who acquire renal failure as an out-patient, not while they're in the hospital, would include ingestion of some toxic substance, whether it be a medicine or a food, but some ingestion; an autoimmune disease where the person becomes allergic to themselves and attacks their kidneys; or an infectious agent, some form of infection which would cause it, are the three general categories that I would think about for people who are outside the medical system when they begin to get sick.

Q. Basically you ruled out the last two in your work-up of Bart [Jensen], didn't you?

A. There was no evidence of the autoimmune disease that we discovered and we found no evidence of infection. But I cannot say to a reasonable degree of medical certainty that those were not involved based on my work-up. (Hearn Depo p. 15–16)

This testimony presents "evidence which a reasonable mind might accept to support [the] conclusion," *Warden* 132 Idaho at 456–57, 974 P.2d at 508–09 (1999), that Dr. Hearn believed that the most likely cause of Jensen's renal failure was the ingestion of the Pain–Off. While, perhaps, the Industrial Commission referee interpreted the testimony of Dr. Hearn differently from how the City would have interpreted his testimony, there nevertheless, appears to be substantial and competent evidence to support the referee's and the Industrial Commission's conclusions.

Next, the City takes issue with a portion of the referee's finding of fact number 33, that "Dr. Hearn's testimony demonstrates he considered Claimant's May 1, 1997, ingestion of medication at work the most likely cause of his renal failure." Again, Dr. Hearn testified as follows:

Q. Dr. Narasimhan basically is saying that given what's in Pain–Off, he doesn't think that could cause it; right?

A. Yes.

Q. And basically you're saying you wouldn't expect it, either?

A. Yes, that's correct.

Q. In the inquiry, the index of suspicion requires that we say whatever was in there has got to be right on the top of our list because of the sequence of events; right?

A. I'm trying to be exactly correct in how I answer that. In the list of my speculation of what might have caused the renal failure, then it would be at the top of that list of my speculation. *I don't know of anything that would be higher,* but I have no evidence to support that it was the cause.

Q. That's right. That's right. Nobody does, and nobody will if the medication was all destroyed?

A. I think that's probably fair. That's correct.

(Emphasis added).

Again, Dr. Hearn's testimony directly supports the referee's finding. Dr. Hearn testified that Jensen's ingestion of Pain–Off was "at the top of that list of my speculation. I don't know of anything that would be higher ...." Therefore, this finding of the Industrial Commission's referee is also supported by substantial and competent evidence.

Finally, the City claims that the referee's finding number 37, that "The non-expert evidence and much of the expert evidence herein indicate a causal relationship between claimant's ingestion of Pain–Off at work and his renal failure ...." is not supported by substantial and competent evidence.

Support for the finding that "non-expert" evidence indicated a causal connection between Jensen's Pain–Off ingestion and his renal failure comes from the testimony of Jensen's supervisor. For example, Kirk Malm testified that within minutes of Jensen's taking the Pain–Off, he observed Jensen "doubled over holding his stomach and, if I recall, his back. And he looked terrible .... So at that time, I told him to head for the truck—or the pickup, that I was going to take him in, and we'd left. On my way out, I had taken a package of the Pain–Off with me. Not that—I don't know, it's just something in my nature, if a kid gets sick, or somebody gets sick or ill or hurt, go back to the last thing that they'd done ...."

Other "non-expert" evidence would include, the closeness in time between the ingestion of the Pain–Off and the onset of symptoms. Jensen testified that it was only about "two, three minutes" between taking the Pain–Off and the onset of the symptoms. Jensen testified that after being discharged from the hospital and returning home his condition continued to deteriorate. The referee heard Jensen's explanation that from the time he took the Pain–Off, until he was diagnosed with renal failure, he never recovered. He stated he could not keep anything down, and did not urinate until Saturday. This testimony provided the referee with some evidence of a causal link between the ingestion of Pain–Off and the renal failure.

Additionally, the referee heard "expert" evidence, in the form of deposition testimony, that Jensen's treating physician considered the ingestion of the Pain–Off to be "at the

top of that list of my speculation," as to the cause of the renal failure.

Therefore, while perhaps the evidence does not overwhelmingly establish a definite causal link between the Pain–Off ingestion and Jensen's renal failure, it does provide substantial and competent evidence to support the referee's finding of fact number 37. Since this Court's review is limited to a determination of whether the Industrial Commission's decision is supported by substantial and competent evidence, this Court holds that the Industrial Commission did not err in its findings.

**B. Jensen's Reaction To The Pain–Off Was An "Industrial Accident" Within The Definition Provided In The Workers' Compensation Act.**

█ Jensen contends that the Industrial Commission correctly determined that his ingestion of medication at work was an "industrial accident" as contemplated by the Workers' Compensation Act. The City, on the other hand, maintains that the ingestion of medication is not an "industrial accident" within the express definition provided in Section 72–102(17) of the Idaho Code.

The Idaho Code defines an accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72–102(17)(b). The City argues that Jensen's injury does not fit within this definition because "there was no precipitating event or mishap" giving rise to the injury.

While this Court has not directly addressed the issue of whether a toxic reaction to medication given an employee by an employer is an industrial accident, there are cases that provide some guidance. In *Combes v. State, Industrial Special Indemnity Fund,* 130 Idaho 430, 942 P.2d 554 (1997), this Court discussed the nature of an "accident" under I.C. § 72–102(17)(b). In that case, the Industrial Commission had determined that Combes had sustained an accident when he developed asthma symptoms while working heavy equipment on a dusty

job site. *Combes,* 130 Idaho at 431, 942 P.2d at 555. On appeal this Court determined that the Industrial Commission's conclusion that "Claimant's exposure to dust, grasses, mold, animal danders and pollens in the three to six months prior to November 1992" did not fit within the definition of accident under the Idaho Code. *Id.* at 432, 942 P.2d at 556. The Court quoted from a previous opinion that "Nelson did not provide any medical evidence connecting the aggravation of her carpal tunnel syndrome to 'an unexpected, undesigned, and unlooked for mishap, or untoward *event,* reasonably identifiable as to the time when [and] the place where it occurred.'" *Id.* at 433, 942 P.2d at 557 (quoting *Langley v. Industrial Spec. Indem. Fund,* 126 Idaho 781, 785–86, 890 P.2d 732, 736–37 (1995)).

In the present case, it is undisputed that Jensen ingested Pain–Off minutes before the onset of severe abdominal cramping and back pain. Jensen's supervisor provided the medication and thought that Jensen's reaction warranted taking him to the hospital. The treating physician in the emergency room diagnosed Jensen as having a "MEDICAL REACTION" and treated Jensen with Benadryl.

Therefore, the Industrial Commission referee had before it a distinct accident that produced "an unexpected, undesigned, and unlooked for mishap, or untoward event. . . ." Clearly, having a severe medical reaction to taking medication for a headache is not an expected event. Thus, we hold that Jensen's medical reaction to the Pain–Off was an accident within the definition provided by the Idaho Code. However, the issue then becomes whether the accident caused an injury which arose "out of and in the course of an employment covered by the worker's compensation law." I.C. § 72–102(17)(a).

This Court has held that "an injury which cannot be traced to the worker's employment as a contributing proximate cause and which comes from a hazard to which a worker would have been equally exposed outside of the workplace is not compensable under our worker's compensation system." *Evans v. Hara's, Inc.,* 123 Idaho 473, 480, 849 P.2d 934, 941 (1993). In that case, Evans suffered

a head injury when he fell on the concrete floor at his place of employment. *Id.* at 475, 849 P.2d at 936. It was determined that the fall was caused by an alcohol withdrawal seizure. *Id.* The fall was in an area away from any machinery and "ten to twelve feet from any object." *Id.* at 476, 849 P.2d at 937.

The Court concluded that the injury was not compensable because it was one in which "a worker would have been equally exposed [to] outside of the workplace." *Id.* at 480, 849 P.2d at 941. Further, the Court noted that "an injury resulting from an idiopathic fall at the workplace does not arise out of employment and is not compensable under our worker's compensation system without evidence of some contribution from the workplace." *Id.*

In the present case, the City argues that Jensen's injury was not contributed to by his workplace, and that the ingestion of the Pain–Off was a danger he was equally exposed to outside his workplace. However, as indicated by the Industrial Commission's referee, there is no evidence to support the claim that Jensen was as exposed to Pain–Off outside his employment as there was in *Evans.* In *Evans,* the Court found that nothing from the employment contributed to the injury. However, here there was medical evidence that the Pain–Off contributed to the injury. Thus, Jensen has provided evidence that the medication he received at work contributed to, if not caused, his injury of May 1, 1997. Thus, this Court concludes that the present case is distinguishable from *Evans* and holds that Jensen's illness was an injury under the definition contained in Idaho Code section 72–102(17).

**C. The Industrial Commission's Conclusion That Jensen Had Failed To Establish That His Renal Failure Was Causally Related To An Industrial Accident Is Not Supported By Substantial And Competent Evidence.**

The City argues that there is substantial and competent evidence to support the Industrial Commission's conclusion that Jensen failed to prove that his renal failure was causally related to his ingestion of Pain–Off. Jensen, on the other hand, argues that the

Industrial Commission erred because its conclusions were inconsistent.

As indicated in the standard of review, this Court will not overturn a decision of the Industrial Commission if there is substantial and competent evidence to support its findings. *Zapata,* 132 Idaho at 515, 975 P.2d 1180 (1999). "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.*

■■■ In a hearing before the Industrial Commission:

> The claimant carries the burden of proof that to a reasonable degree of medical probability the injury for which benefits are claimed is causally related to an accident occurring in the course of employment. Proof of a possible causal link is insufficient to satisfy the burden. The issue of causation must be proved by expert medical testimony.

*Hart v. Kaman Bearing & Supply,* 130 Idaho 296, 299, 939 P.2d 1375, 1378 (1997) (internal citations omitted). "In this regard, 'probable' is defined as 'having more evidence for than against.'" *Soto v. Simplot,* 126 Idaho 536, 540, 887 P.2d 1043, 1047 (1994). Additionally, "physician opinions are not binding on the Commission, but are advisory." *Id.* at 539, 887 P.2d at 1046.

■■■ The Industrial Commission determined that Jensen's renal failure was not causally connected to his ingestion of the Pain Off because "Dr. Hearn repeatedly and expressly refused to opine to a reasonable degree of medical probability that Claimant's renal failure was caused by his Pain–Off ingestion and /or solvent exposure at work ...."

■■■ However, while Dr. Hearn expressly refused to say the words "reasonable degree of medical probability," it is clear from his testimony that he considered that Jensen's renal failure to be more likely than not caused by his ingestion of Pain-Off. This Court has held that "No special verbal formula is necessary when, as here, a doctor's testimony plainly and unequivocally conveys

his conviction that events are causally related." *Paulson v. Idaho Forest Indus., Inc.*, 99 Idaho 896, 901, 591 P.2d 143, 148 (1979), *overruled on other grounds by Jones v. Emmett Manor*, 134 Idaho 160, 165, 997 P.2d 621, 625 (2000) (holding that "To the extent *Dean v. Dravo Corp.*, 95 Idaho 558, 511 P.2d 1334 (1973) and *Paulson v. Idaho Forest Industries* suggest a requirement of oral medical testimony in every case, the suggestion is disavowed."). Therefore, we hold that Dr. Hearn's testimony, coupled with the facts, adequately established a causal connection between Jensen's Pain-Off ingestion and his renal failure, when Dr. Hearn indicated that he did "not know of anything that would be higher" on his list of speculation. While this is admittedly a difficult and close call, "[w]e must liberally construe the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated." *Murray–Donahue v. National Car Rental Licensee Ass'n.*, 127 Idaho 337, 340, 900 P.2d 1348, 1351 (1995).

## IV.

## CONCLUSION

This Court holds that Jensen's injuries of May 1, 1997, were within the definitions of industrial accident contained in section 72–102(17) of the Idaho Code. We reverse the holding of the Industrial Commission in its determination that Jensen failed to prove his kidney (renal) failure was causally related to his ingestion of Pain–Off. The case is remanded to allow Jensen to proceed to establish his damages. No attorney fees are awarded. Costs to appellant.

Justices SCHROEDER and WALTERS concur.

Justice SILAK dissenting.

I dissent from Parts IIIC and Part IV of the majority opinion, although I concur in the remainder of the opinion. The majority correctly cites this Court's standard of review in stating that the Court will not overturn a decision of the Industrial Commission if there is substantial and competent evidence to support its findings, citing *Zapata v. J.R.*

*Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). In my view the decision of the Industrial Commission concerning the causal relationship between Jensen's renal failure and an industrial accident should not be reversed under the above standard of review.

In the Referee's Findings of Fact, Conclusions of Law, and Recommendations (adopted by the Industrial Commission in its Order), the issue of causation is addressed as follows:

36. Consistent with a long line of medical causation cases, the Supreme Court recently declared:

The claimant carries the burden of proof that to a reasonable degree of medical probability the injury for which benefits are claimed is causally related to an accident occurring in the course of employment. *Buffington v. Potlatch Corp.*, 125 Idaho 837, 839, 875 P.2d 934, 936 (1994). Proof of a possible causal link is insufficient to satisfy the burden. *Beardsley v. Idaho Forest Indus.*, 127 Idaho at 406, 901 P.2d at 513; *Roberts v. Kit Mfg. Co.*, 124 Idaho at 947, 866 P.2d at 970. The issue of causation must be proven by expert medical testimony. *Langley v. State Indus. Special Indem. Fund*, 126 Idaho 781, 890 P.2d 732 (1995); *Soto v. Simplot*, 126 Idaho at 540, 887 P.2d at 1047.

*Hart v. Kaman Bearing & Supply*, 130 Idaho 296, 299, 939 P.2d 1375, 1378 (1997).

37. The non-expert evidence and much of the expert evidence herein indicate a causal relationship between Claimant's ingestion of Pain-off at work and his renal failure. Defendants' alternate causation theories are unpersuasive. However, Dr. Narasimhan opined there was no causal relationship and, although "no special verbal formula is necessary," *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 901, 591 P.2d 143, 148 (1979), inasmuch as Dr. Hearn repeatedly and expressly refused to opine to a reasonable degree of medical probability that Claimant's renal failure was caused by his Pain-off ingestion and/or solvent exposure at work, *Hart* requires the conclusion that Claimant has

failed to establish by expert medical testimony that his renal failure was work-related.

The majority opinion appears to reinterpret the testimony of Dr. Hearn to support a causation finding, contrary to the Commission's reasonable interpretation of that same testimony. This approach departs from the traditionally deferential standard of review of the Commission's findings of fact. Accordingly, I dissent and would affirm the order of the Commission.

Chief Justice TROUT concurs.