51 P.3d 403

**Robert P. SEUFERT, Claimant–Appellant,**

v.

**Henry LARSON, Old Farm Tree Service, Employer, and Associated Loggers Exchange, Surety, and State of Idaho, Industrial Special Indemnity Fund, Defendants–Respondents.**

No. 26732.

Supreme Court of Idaho, Boise, April 2002 Term.

July 16, 2002.

Michael J. Vrable, Boise, for claimant-appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for defendants-respondents Henry Larson, Old Farm Tree Service, and Associated Loggers Exchange. Glenna M. Christensen argued.

Mallea Law Offices, Boise, for defendant-respondent State of Idaho, Industrial Special Indemnity Fund. Kenneth L. Mallea argued.

SCHROEDER, Justice.

Robert Seufert appeals the Industrial Commission's decision denying him total and permanent disability under the odd lot doctrine and its apportionment of impairment under I.C. § 72–406.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Robert Seufert began working in the logging industry in 1964, his primary duty being setting chokers. He has been employed in the logging industry all his work life, except for four years in the Navy.

Seufert had a staphylococcus infection in his left leg in 1970, and sustained a left hip injury from a blow by a choker. The record did not contain any impairment ratings for these injuries. In 1979 he suffered multiple injuries as the result of an accident when he was sitting on his motorcycle at the side of the road. He was struck by a jeep, fell ten to twenty feet over a bridge, and landed on rocks. His injuries included fractured ribs, a punctured lung, two broken legs, AC separation in his right shoulder, a fractured left ankle, left foot, left kneecap, and two broken fingers on his left hand. He was hospitalized for four months and was unable to work for two years because of his injuries. His doctors advised him not to work in the woods, not to work on his feet, and to retrain into a lighter and sedentary position.

Seufert testified that he never fully recovered from the motorcycle accident and that he suffered from swelling and weakness in his legs and from a limited ability to walk. However, he returned to logging, working for numerous employers who were also his friends. He began working for Henry Larson and the Old Tree Farm Service (Employer) in 1993 on a logging team.

On November 20, 1995, Seufert was operating a Cat on the job. He got off to set a chain and the Cat rolled over, landing on his left leg. He was taken to Gritman Medical Center in Moscow where Dr. Graeme French (Dr. French) performed surgery on his left leg, inserting a metal rod from his knee to his ankle. He had a fractured left tibia, a severely crushed extruded calf muscle, and a superficial posterior compartment. A week later, Seufert had a skin graft on his lower left leg.

At the Employer's surety's request, Seufert was examined on August 5, 1996, by Dr. Thomas Crow (Dr. Crow), an orthopedic surgeon. Dr. Crow opined that Seufert was not medically stable at that time and could not return to his usual employment. The skin graft was slow to heal, and Seufert was referred to Dr. Steven Ozeran (Dr. Ozeran) for further treatment. On February 13, 1997, Dr. Ozeran noted that Seufert's leg was healed and saw no reason why he could not resume work. On March 17, 1997, Dr. French determined that Seufert was completely healed, and he could return to his usual job.

At the Employer's request, Seufert was examined by Dr. Richard Knoebel (Dr. Knoebel) on March 31, 1997. Dr. Knoebel assigned Seufert a 33% combined permanent physical impairment with 29% preexisting, no impairment for the tibia fracture, and 5% impairment for the skin graft. He noted that Seufert would need to guard against mechanical and thermal exposure to the skin graft site. He also stated that although Seufert was limited in his abilities, he was noted to be so prior to the industrial accident.

Seufert began receiving Social Security disability benefits in May of 1997. He testified that if he returned to work, his disability benefits would be reduced.

On July 9, 1997, Seufert filed a worker's compensation complaint against the Employer and another complaint against the Industrial Special Indemnity Fund (ISIF). He filed another complaint against the ISIF on May 7, 1999.

At Seufert's request, Dr. Michael Carraher (Dr. Carraher) examined him on June 30, 1999. Dr. Carraher agreed with Dr. Knoebel's 29% impairment rating, but increased

the preexisting impairment to 31% to account for Seufert's hand injuries. He also agreed with the 5% rating for the skin graft. Although Dr. Carraher did not offer an opinion regarding Seufert's ability to work, he did state that his prior injuries prevented him from doing extensive standing, walking, or lifting, and that the prior injuries limited his abilities. Seufert walked with a cane, and did not work following the 1995 industrial accident.

An Industrial Commission referee held a hearing on January 18, 2000. The claimant, the Employer, and the Employer's surety agreed that Seufert was totally and permanently disabled. The ISIF contended that Seufert was not totally and permanently disabled, and that he had removed himself from the labor market. The ISIF argued in the alternative that the injuries suffered as a result of the 1979 motorcycle accident are the sole cause of his disability, and that any later employment was the result of sympathetic employers. Seufert testified that he had tried to find employment in Washington State and with the defendant Employer, but was unsuccessful. He tried to secure employment as a logger, carpenter, or a mechanic, but not much was available in the St. Maries area.

The referee found that Seufert established a prima facie case of odd lot status by the third method—any attempt to find employment would have been futile. The referee apportioned Seufert's injuries under the *Carey* formula, finding that his physical impairments totaled 36% of the whole person, 31% preexisting and 5% attributable to the 1995 industrial accident, with non-medical factors accounting for 64% of his total disability. The Employer was liable for 14% of Seufert's total disability, and the ISIF was responsible for the balance.

The Industrial Commission (Commission) issued its findings of fact, conclusions of law, and order on June 6, 2000. The Commission did not adopt the referee's findings of fact, conclusions of law, and recommendations. Instead, it found that Seufert had not established a prima facie case of total and permanent disability under the odd lot doctrine. The Commission found that Seufert had not

made a legitimate attempt to perform any jobs; that his work search was insufficient; that he never met with a vocational rehabilitation counselor; and that there was no evidence that a job search in the St. Maries area would have been futile because there was no assessment of the availability of light sedentary jobs. It also found that he was not totally and permanently disabled prior to the 1995 industrial accident, because he was able to return to work in the logging industry following his 1979 motorcycle accident. The Commission found that the amount of Seufert's impairment attributable to the 1995 industrial accident was 5%, and that the Employer was liable for a 15% disability. The Commission dismissed the complaint against the ISIF.

Seufert filed a motion for reconsideration, which the Commission denied, stating that case law supported its decision to modify the referee's findings and conclusions. Seufert appealed, requesting that the findings of the referee be included in the record. The Commission did not include the referee's findings in the record and denied Seufert's motion to augment. Seufert filed a motion to augment with this Court, which was granted, ordering that the referee's findings and conclusions be added to the record.

## II.

### STANDARD OF REVIEW

In *Jensen v. City of Pocatello*, 135 Idaho 406, 409, 18 P.3d 211, 214 (2000), this Court set forth the following standard of review:

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

. . . .

The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to reweigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.,* 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

*Jensen,* 135 Idaho at 409, 18 P.3d at 214.

## III.

## THE COMMISSION HAD THE AUTHORITY TO MAKE ITS FINDINGS AND CONCLUSIONS IN PLACE OF THOSE SUBMITTED BY THE REFEREE IN DETERMINING SEUFERT HAD NOT PROVED ODD LOT STATUS

■ Seufert argues that odd lot status may be established by the claimant's own testimony or the testimony of others, and that the fact finder's evaluation of a claimant's credibility is crucial in determining whether the odd lot status has been established. He maintains that the Commission may not set aside the referee's findings based on credibility, unless the referee's findings are clearly wrong or the referee misconceived or overlooked material evidence. Consequently, he asks that this Court remand the case to the Commission with a finding of odd lot status, arguing that there is no substantial and competent evidence to support the Commission's finding that he did not establish an odd lot case.

Idaho Code section 72–506(2) provides the following:

Every finding, order, decision or award made by any member, hearing officer, referee, or examiner pursuant to such investigation, inquiry or hearing, when approved and confirmed by the commission, and ordered filed in its office, shall be deemed to be the finding, order, decision or award of the commission.

Idaho Code section 72–717 states:

If the matter has been assigned for hearing by a member, hearing officer, referee, or examiner, the record of such hearing, together with the recommended findings and determination, shall be submitted to the commission for its review and decision.

Idaho Code section 72–1368(7) provides in relevant part:

On the basis of the record of proceedings before the appeals examiner as well as additional evidence, if allowed, the commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner, or may refer the matter back to the appeals examiner for further proceedings.

■ The Commission has the authority to make decisions provided that each decision is supported by substantial and competent evidence. The Commission may substitute its own findings and conclusions for that of the referee as long as the Commission's decision is supported by substantial and competent evidence. *See, e.g., Kirk v. Karcher Estates,* 135 Idaho 230, 16 P.3d 906 (2000); *Steen v. Denny's Rest.,* 135 Idaho 234, 16 P.3d 910 (2000); *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 975 P.2d 1178 (1999); *Reedy v. M.H. King Co.,* 128 Idaho 896, 920 P.2d 915 (1996).

The Commission adopted the referee's findings of fact but not her conclusions of law or recommendation. The Commission found that the facts to which Seufert testified, not his demeanor while giving testimony, established that he had not·proven odd lot status. The Commission determined that Seufert did not provide enough facts to establish that he had looked for other employment that did not exceed his physical capabilities, noting that there was no evidence of what light, sedentary jobs were available in St. Maries and that Seufert had not met with a vocational rehabilitation expert to help him find other employment.

■ A claimant can prove odd lot status through one of three methods: (1) showing what other types of employment he has attempted to obtain, (2) showing that he, or vocational counselors, employment agencies, or the Job Service on his behalf, have searched for other work and that other work was not available, or (3) showing that any efforts to find suitable employment would have been futile. *Huerta v. School Dist. No.*

*431,* 116 Idaho 43, 49, 773 P.2d 1130, 1136 (1989).

Seufert testified that he had looked for employment in Washington and Idaho as a logger, carpenter, and mechanic, but that either no one was hiring, or no one would hire him due to his injuries. He testified that he needed to take frequent breaks, could not stand for very long, walked with a cane, and needed to guard his skin graft against temperature changes. Seufert, Henry Larson, Old Farm Tree Service, and its surety all agreed at the hearing that Seufert was totally and permanently disabled following the industrial accident. The referee found that Seufert had established odd lot status through the third method, futility.

Seufert is a sixty-year old man who did not complete high school. He lives in St. Maries, Idaho, a logging and milling town with a population of approximately 2,500 people. He has been employed in the logging industry almost all of his life. He suffered severe injuries following a motorcycle accident, but he returned to a heavy labor position in the logging industry for over fifteen years. Heavy manual labor in the logging industry or as a mechanic is the type of work for which he is trained. After suffering an industrial accident that caused extensive damage to his left leg, he looked for other employment, although he testified no one would hire him because of his injuries. He did not offer evidence of what light duty employment might be available.

Seufert has offered compelling evidence of his claim. However, the Commission determined that he did not meet his burden of proof to establish odd lot status. The record can be read to support this determination. Consequently, the Commission's decision must be affirmed.

## IV.

## THE COMMISSION PROPERLY APPORTIONED DISABILITY UNDER I.C. § 72–406

■ Seufurt challenges the apportionment made by the Commission pursuant to I.C. § 72–406. The Commission found that his total disability is 50% inclusive of impairment but reduced the employer responsibility to 15%.

■ Idaho Code § 72–406(1) provides that "in cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease." In such cases, "the surety does not become liable for all of the disability resulting from the combined causes of a preexisting injury and/or infirmity and the work-related injury, but only for that part of the disability attributable to the work-related injury." *Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 929, 772 P.2d 119, 136 (1989). "The Commission's apportionment under this statute must be explained with sufficient rationale to enable this Court to review whether the apportionment is supported by substantial and competent evidence." *Reiher v. American Fine Foods,* 126 Idaho 58, 62, 878 P.2d 757, 761 (1994).

The decision of the Commission mandated an apportionment under I.C. § 72–406. Seufert suffered from extensive preexisting injuries as the result of his 1979 motorcycle accident from which he never fully recovered. Both Drs. Knoebel and Carrahr agreed that those injuries were the substantial impediment to Seufert's physical activities. Both doctors also concurred in a 5% impairment rating for the 1995 industrial accident. The Commission had evidence to support its finding that Seufert's permanent disability resulting from the 1995 industrial accident—inclusive of impairment—was 15%, for which respondents were liable.

## V.

## THE EMPLOYER AND SURETY ARE NOT ENTITLED TO ATTORNEY FEES UNDER I.A.R. 11

■ The respondents argue that they are entitled to attorney fees under I.A.R. 11 and *Talbot v. Ames Constr.,* 127 Idaho 648, 904 P.2d 560 (1995), because appellant has failed to present a good faith basis for bringing this

appeal. In *Talbot,* this Court held that all the claimant's attorney asked the Court to do was re-weigh the evidence and reach a different conclusion than that reached by the Commission. The respondents maintain that all Seufert has asked this Court to do is re-weigh the evidence and enter a new conclusion favorable to him. As such, respondents are entitled to attorney fees.

This Court has consistently refused to award attorney fees pursuant to I.A.R. 11.1 to cases in which it found a good faith basis for the appeal. *See Tupper v. State Farm Ins. Co.,* 131 Idaho 724, 731, 963 P.2d 1161, 1168 (1998) (declining to award attorney fees because it found the appeal had not been brought in bad faith); *Bullard v. Sun Valley Aviation, Inc.,* 128 Idaho 430, 434–35, 914 P.2d 564, 568–69 (1996) (refusing to award attorney fees because legitimate issues had been presented on appeal). Seufert has presented good faith arguments concerning the standards to be applied when the Commission makes determinations contrary to the referee when the referee has been in the position to observe demeanor and decide credibility. There is no basis to award attorney fees.

## VI.

### CONCLUSION

The decision of the Industrial Commission is affirmed. The respondents are awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS and EISMANN concur.

Justice KIDWELL, dissenting.

After a close review of the record, it is clear that the Industrial Commission's decision is not supported by substantial and competent evidence. Therefore, I dissent.

The Industrial Commission's conclusions of law are freely reviewable by this Court. *Taylor v. Soran Rest., Inc.,* 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). Factual findings will be upheld if supported by substantial and competent evidence. *Id.*

In the present case, the Commission adopted the referee's findings of fact, but not the conclusions of law or recommendation. In its decision, the Commission found that the facts to which Seufert testified established that he had not proven odd lot status. The Commission held that Seufert did not provide enough facts to establish that he had looked for other employment. It also found that Seufert had tried to find work in areas that exceeded his physical capabilities, Seufert had not met with a vocational rehabilitation expert to help him find other employment, and that Seufert had not provided any evidence of what light, sedentary jobs were available in St. Maries.

As the majority notes, the findings of fact are undisputed in this case.

Seufert testified that he had looked for employment in Washington and Idaho as a logger, carpenter, and mechanic, but that either no one was hiring, or no one would hire him due to his injuries. He testified that he needed to take frequent breaks, could not stand for very long, walked with a cane, and needed to guard his skin graft against temperature changes. Seufert, Henry Larson, Old Farm Tree Service, and its surety all agreed at the hearing that Seufert was totally and permanently disabled following the industrial accident. The referee found that Seufert had established odd lot status through the third method, futility.

Seufert is a sixty-year old man who did not complete high school. Seufert lives in St. Maries, Idaho, a logging and milling town with a population of approximately 2,500 people. He has been employed in the logging industry almost all of his life. He suffered severe injuries following a motorcycle accident, but he returned to a heavy labor position in the logging industry for over fifteen years. Heavy manual labor in the logging industry or as a mechanic is the type of work for which Seufert is trained. After suffering an industrial accident that caused extensive damage to his left leg, he looked for other employment, although he testified no one would hire him because of his injuries. He did not offer evidence of what light duty employment might be available.

The Commission's findings appear to be based on its belief that Seufert is able to

work. Yet, that conclusion is not supported by substantial and competent evidence in the record. The Commission parsed Seufert's testimony in an effort to meet the substantial and competent evidence standard. The Commission noted that Seufert did not meet with a vocational rehabilitation expert, but this Court has not required that of a claimant in order to prove odd lot status. Even if Seufert had met with a vocational rehabilitation expert, it is highly unlikely that continuous employment would have been found in the St. Maries area for Seufert. Lighter jobs at a fast food restaurant or convenience store involve a great amount of standing. Janitorial work involves standing and bending. The Commission's finding that Seufert must enter a new profession, after almost forty years as a logger, at an age when many are considering retirement, and with employment-limiting injuries, is contrary to the purpose of the odd lot doctrine.

The evidence in the record supports Seufert's claim that he is totally and permanently disabled under the odd lot doctrine. Because I would find that Seufert did establish total and permanent disability under the odd lot doctrine, I would also find that apportionment should be calculated pursuant to I.C. § 72–332. I would reverse the Commission's decision in this case.